JAMES MAXEY v. STATE OF INDIANA.

[No. 276S42. Filed August 27, 1976.]

*Larry R. Champion,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Elmer Lloyd Whitmer,* Deputy Attorney General, for appellee.

DeBruler, J.—Appellant was charged, tried by jury, and convicted of first degree murder and received a sentence of life imprisonment. He appeals on four grounds:

1. That the evidence of sanity at the time of his alleged criminal acts was insufficient;

2. That the evidence as it relates to the element of premeditation was insufficient;

3. That the trial court erred in permitting the State to dismiss the charge on the morning of trial when the reason for the dismissal was an error in the date of the offense, both in the grand jury indictment and in the State's untimely answer to appellant's notice of alibi filed three days before trial;

4. That the trial court erred in refusing to release appellant on his own recognizance pursuant to Ind. R. Crim. P. 4(A) when he had been in custody more than six months after his arrest.

Appellant was charged with having shot and killed Ellen Maxey. On September 16, 1974, at about 11:00 a.m., Ellen Maxey [the victim] left appellant, and along with their baby

moved in with her mother, Ellen Graham, who lived on Orchard Street in Indianapolis. An hour later at noon appellant confronted the victim and her mother in the house on Orchard Street and demanded that she return home, which she steadfastly refused to do. Appellant then said that if she did not come home he would kill her. She replied that he could go ahead and kill her, but she was not going back. Appellant then left, taking their baby with him.

Appellant returned to the house on Orchard Street at about 2:45 p.m. the same afternoon only to discover that the victim had left the house. She had gone to pick up two children in a car. She returned about 3:00 p.m., and at this time appellant again drove up to the house on Orchard Street. He backed his car into the driveway and walked past the victim's brother who was outside the house washing a car and entered the house. The victim and her mother were in the kitchen preparing to eat a meal. He walked up to the victim, caught her by the arm and said, "You ain't comin', huh?" She replied, "I done told you." Appellant drew a pistol and shot her in the stomach, whereupon she fell to the floor grasping her stomach with both hands. He then stepped to the door. The mother then cried out, "Oh my God, you shot my daughter." He then aimed the gun, and shot the victim through the head as she lay helpless on the floor and then stepped out the door.

After exiting, he passed by the door again and noticing the mother inside, pointed the gun at her through the door and said, "You want some?" He then turned on the victim's brother, cursed him and shot twice at him, but missed. Appellant then got in his car and drove off. These events were described by the mother and brother of the victim in their testimony at trial. Appellant also testified and admitted shooting the victim the first time, but did not remember firing the second shot, and claimed the victim attacked him with a butcher knife and that he shot her in self defense.

Appellant claims that the evidence was insufficient to support the jury's verdict that appellant was legally sane at the

time of the offense. When called upon to decide an issue such as this, it is not our function to weigh the evidence at the trial below or decide questions concerning the credibility of witnesses. *Priola* v. *State,* (1973) 260 Ind. 117, 292 N.E.2d 604. Rather we look to the evidence most supportive of the verdict and determine whether that evidence, along with reasonable inferences which the jury might draw from it, has established all the necessary elements of the offense charged. *Smith* v. *State,* (1970) 254 Ind. 401, 260 N.E.2d 558. In setting forth the facts of this case above, these criteria have been adhered to.

Appellant entered a plea of not guilty by reason of insanity and the jury received an instruction which recited the definition of legal insanity. At the trial the burden was fastened upon the State to prove beyond a reasonable doubt that appellant at the time of the shooting did not lack substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law, as a result of a mental disease or defect. *Hill* v. *State,* (1969) 252 Ind. 601, 251 N.E.2d 429; *Wilson* v. *State,* (1975) 263 Ind. 469, 333 N.E.2d 755. The evidence tending to satisfy this burden, heard by the jury, was sufficient if believed to warrant the jury in concluding beyond a reasonable doubt that appellant was not insane. The evidence included the testimony of the brother and mother of the victim. They testified that appellant and the victim had lived together for about ten years during the period leading up to the shooting, and that they both knew appellant well. The brother testified that appellant was sane at the time of the shooting, although he appeared violently angry. The mother testified that he acted and appeared at the time as he usually did. His conduct in parking the car, in shooting the victim the second time after the expiration of a few moments, his awareness of the fact that he had shot her manifested immediately after the shooting in his threat to the mother, and his awareness of the danger presented by appellant's brother immediately thereafter outside, support the inference that he was conscious

of the quality of his acts and their probable consequences, and was responding rationally.

During the final phase of the trial, on the issue of insanity, three psychiatrists testified that they held the opinion that appellant was not suffering from a mental disease or defect at the time of the offense as a result of which he was unable to appreciate the wrongfulness of what he was doing or to conform his conduct to what he knew was right. This testimony also supported the jury's determination. Appellant contends however, that after stating their opinions in appropriate legal form that appellant was not insane, each made further statements under examination by defense counsel, which undermined the force of the opinions to the point where such opinions could not be substantial evidence of sanity. It is true that under such examination one doctor testified that appellant had been out of control and "unable to adhere to the rightfulness of his behavior," and another stated that appellant was a paranoid personality and a third doctor testified that appellant was acting at the time under extreme emotional stress. These statements certainly do weaken and undermine the opinions of the witnesses, however, such opinions remain, along with the lay testimony relevant to the element of sanity, and form, on appeal, evidence of substantial probative value from which the jury could have concluded beyond a reasonable doubt that appellant was sane. *Wilson* v. *State, supra.*

Appellant also challenges the sufficiency of the evidence of the element of premeditation. That subsection of the statute defining first degree murder under which appellant was convicted reads in pertinent part as follows:

> "(a) Whoever kills a human being . . . purposely and with *premeditated malice* . . . is guilty of murder in the first degree and, on conviction, shall be imprisoned in the state prison during life. . . ." (Emphasis added.) Ind. Code § 35-13-4-1 (Burns 1975)

In *McKinstry* v. *State,* (1975) 264 Ind. 29, 338 N.E.2d

636, malice as an element of second degree murder was under consideration and we stated:

"On the one hand, malice may be defined in a positive fashion. Blackstone defined malice . . . as 'any evil design in general; the dictate of a wicked, depraved and malignant heart.' (Citations omitted.)

On the other hand, malice may be defined in a negative fashion. It is that state of mind which exists when one purposely kills another not in the heat of passion induced by sufficient provocation, (citations omitted) not excused, as the acting in self-defense, (citation omitted) and not justified, as the killing in military combat. (citations omitted.)"

From appellant's threat and his conduct on this day the inference is clear that appellant concluded in his own mind that if the victim would not return to live with him he would kill her. Even under circumstances of extreme emotional stress surrounding the break up of a close personal relationship, such a plan of action is to be condemned as evil and wrong. And from the testimony, the jury could have concluded beyond a reasonable doubt, that appellant's state of mind was not excused, justified, or the product of heat of passion in the legal sense of those terms.

But to find malice is not enough to convict for first degree murder. In order for that conclusion to be reached, the malice must be premeditated upon. Ind. Code § 35-13-4-1, *supra.* To premeditate upon a thought is to hold it and reflect upon it, to meditate upon it, to turn it over in one's mind, and to subject it to deliberate thought. *Everett* v. *State,* (1934) 208 Ind. 145, 195 N.E. 77. There is a clear inference here that appellant thought over his plan to kill during the period from 12:00 and 3:00 p.m., and again between the first and second shots at the victim. The element of premeditation was sufficiently established by the evidence.

Appellant points out that the psychiatrists who testified on the issue of insanity were of the opinion that the appellant had not premeditated upon a plan to kill. While this expert testimony was before the jury, the jury was not bound by

law to believe it and it did not serve to diminish the entire body of probative evidence of premeditation to the point of legal insubstantiality.

Appellant contends that the trial court erred in granting the State's motion to dismiss the original indictment charging first degree murder. This indictment had been filed November 14, 1974, and after its filing, by agreement of the parties, the cause was set for trial for March 17, 1975. This indictment charged that the offense occurred on September 10, 1974. Following invocation of the alibi statute by appellant, and by operation of its sanction of exclusion, Ind. Code § 35-5-1-3 (Burns 1974), the State was locked into presenting evidence of this offense occurring on that date only. It had failed to file a statement in response to the defendant's notice of alibi more than eight days prior to trial indicating that it would show that the offense occurred on September 16, 1974, the date on which the later evidence at trial demonstrated it actually occurred.

In order to extricate itself from this sanction, and therefore not lose the case, the State chose to file a motion to dismiss on the first morning of trial prior to the attachment of jeopardy. The motion was granted over objection of appellant. The State immediately filed an information charging the same offense to have occurred on September 16, 1974.

Appellant first argues that it was error to grant the motion to dismiss because to do so resulted in a delay in the trial in violation of his speedy trial rights guaranteed by the Sixth Amendment and Art. 1, § 12 of the Indiana Constitution. The delay in trial caused by such a dismissal is attributable to the State for purposes of determining whether a defendant has been held awaiting trial for a longer period than permitted by Criminal Rule 4. *Johnson* v. *State,* (1969) 252 Ind. 79, 246 N.E.2d 181. It does not follow, however, that every dismissal results per se in the violation of speedy trial rights, and therefore this argument of appellant must be rejected.

Appellant next argues that the grant of the motion to dismiss was an abuse of discretion, in that it permitted the State to circumvent the alibi statute and its purposes, and to get an amendment of substance to which it was not entitled. We agree that appellant's idea of the practical consequences of granting the motion is accurate. However, the further and practical effect of the dismissal and subsequent filing of the new charge showing the same offense to have occurred on the later date, is to give rise anew to the right of the accused to again invoke the alibi statute and have its sanctions applied against the State in the new case. On this point also, Judge Wilson deemed his decision on the motion to dismiss to be governed by Ind. Code § 35-3.1-1-13 (Burns 1974). This statute provides in pertinent part:

"Upon motion of the prosecutor the court shall order the dismissal of the indictment or information. The motion may be made at any time before sentencing and may be made orally or in writing. The motion shall state the cause or reason for dismissal."

He concluded therefrom that the court had no discretion to deny the motion to dismiss. Under the circumstances presented, this conclusion was correct. The constraint upon the procedure provided by this statute is that the prosecutor publish or announce his grounds for the dismissal. This was done in the case at bar and the court was bound to grant the motion.

Appellant further contends that the grant of the dismissal motion was an abuse of discretion because the court did not require the prosecutor to produce proof of the validity of the statements in the motion. The failure to require the prosecutor to do so was not an abuse of discretion, as no such requirement appears in the statute governing the procedure.

Following the filing of the new information, appellant filed two motions for release on recognizance for undue delay in bringing him to trial pursuant to Criminal Rule 4(A). He contended that he was entitled to release on recognizance

because at the time he had been held in confinement for more than six months in violation of his speedy trial rights. The first motion was filed on March 19, 1975, and denied on March 27, 1975. The second motion was filed on April 11, 1975, and denied on April 25, 1975. As has been previously noted in this opinion, the first indictment was filed in criminal court on November 14, 1974. On that date the six month period of the rule began to run. *Holt* v. *State*, (1974) 262 Ind. 334, 316 N.E.2d 362. Even assuming that none of the delay in bringing appellant to trial occurring prior to the motions was attributable and chargeable to the appellant, the motions were properly denied. The State had a full six month period following the filing of the indictment in which to bring appellant to trial. Such six month period could not have expired prior to May 14, 1975, well after both motions to be released on recognizance had been filed and denied.

The conviction is affirmed.

Givan, C.J., Arterburn, Hunter and Prentice, JJ., concur.

NOTE.—Reported at 353 N.E.2d 457.