Keith DAVENPORT, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 49S00–9510–CR–1245.

Supreme Court of Indiana.

Dec. 23, 1997.

Steven C. Litz, Monrovia, for Appellant.

Pamela Carter, Attorney General, Preston W. Black, Deputy Attorney General, Indianapolis, for Appellee.

SELBY, Justice.

Keith Davenport ("defendant") was convicted, after a jury trial, of murder, felony murder, attempted robbery, and auto theft. The abstract of judgment shows that defendant was sentenced to sixty years for murder, fifty years for felony murder, twenty years for attempted robbery, and eight years for auto theft. The murder and felony murder convictions were to be served concurrently with each other and consecutively to the attempted robbery and auto theft convictions for a total sentence of eighty-eight years. Defendant raises four issues in his appeal: 1) Whether the trial court properly denied his motion to dismiss all counts but murder? 2) Whether there was insufficient evidence to sustain the convictions? 3) Whether he received ineffective assistance of trial counsel? and 4) Whether the court committed sentencing errors?[1] We affirm the murder conviction but reverse all other convictions.

## FACTS

The facts most favorable to the judgment show that during the early morning hours of June 29, 1994, defendant and Byron Smith were hoping to rob someone. William Sargent drove up beside them in his car. Defendant pulled out a BB gun and pointed it at Sargent. Defendant and Smith got into Sargent's car, and defendant drove them to an alley where he and Smith robbed Sargent of $100. Then, the three of them went to Sargent's house. Once at the house, Smith checked a china cabinet for money, carried a television to the front door, and went into the kitchen to rob Sargent of his food.

While in the kitchen, Smith heard defendant and Sargent struggling in the living room. Smith ran into the living room and saw defendant and Sargent struggling over a .38 handgun. Smith joined in the struggle, and he and defendant hit and kicked Sargent. The gun went off once before defendant got control of it. Defendant forced Sargent, at gunpoint, to leave the house.

Smith drove the three of them to a wooded area. The three of them exited the car and walked to the top of a small hill. Sargent pleaded for his life. Defendant told Sargent that he would give him five seconds to run, and, as Sargent turned to run, defendant shot him. Defendant also fired three more shots. Smith and defendant then left.

Later that morning, Sargent's body was found. An autopsy revealed that Sargent had been beaten about the head and shot five times. Two of the gunshot wounds were to the back. After finding Smith's fingerprints in the car and in Sargent's house, the police arrested Smith. Smith gave a statement wherein he stated that Sargent had invited Smith and defendant to his house to smoke marijuana; that Sargent accused Smith and defendant of selling him bad cocaine; that Sargent pulled a gun on them; that Smith and defendant attacked Sargent, took his gun, and drove him away from his house; and that, once the car stopped and defendant and Sargent exited, Smith heard defendant count to five and then fire four or five shots, but he did not see defendant shoot Sargent.

Defendant turned himself into the police and gave a statement. His statement was essentially the same as Smith's, except that he said that he and Smith left Sargent alive in the car. Defendant and Smith were charged with Sargent's murder. Smith was granted testimonial immunity and testified against defendant at trial.

## DISCUSSION

### I.

■ Defendant first argues that the trial court erred in denying his motion to dismiss the felony murder, attempted robbery, and auto theft charges. On July 14, 1994 in

1. Defendant also raises the issue of whether the court properly instructed the jury on the elements of attempted robbery. As our holding mandates that we reverse the attempted robbery conviction, we need not address this issue.

Marion Superior Court, Criminal Division 5, the State charged defendant with one count of murder. On February 2, 1995, four days prior to trial, the State filed a motion to amend the charging information by adding the charges of felony murder, attempted robbery, and auto theft. The court denied the motion. On February 6, 1995, the State dismissed the murder charge and refiled it, along with the three new charges. The State then transferred the case to Marion Superior Court, Criminal Division 1. In the new court, defendant filed a motion to dismiss the added charges. The trial court conducted a hearing and denied the motion. Defendant argues that this was error because it allowed the State to abuse its power to his prejudice.

Under the authority of Ind.Code § 35–34–1–13, the prosecuting attorney may move for the dismissal of the information at any time prior to sentencing. Ind.Code § 35–34–1–13(a) (1993). So long as the motion states a reason for the dismissal, the trial court must grant the motion. *See* Ind.Code § 35–34–1–13(a); *Burdine v. State,* 515 N.E.2d 1085, 1089 (Ind.1987).

■ The dismissal of an information under Ind.Code § 35–34–1–13 is not necessarily a bar to refiling. *See Joyner v. State,* 678 N.E.2d 386, 393 (Ind.1997). Once an information has been dismissed by the State under Ind.Code § 35–34–1–13, the State may refile an information against the defendant, subject to certain restrictions. For example, Indiana courts have long held that the State may refile for the same offense so long as jeopardy has not already attached. *See Joyner,* 678 N.E.2d at 393; *Willoughby v. State,* 660 N.E.2d 570, 577 (Ind.1996); *Burdine,* 515 N.E.2d at 1089–90; *Johnson v. State,* 252 Ind. 79, 246 N.E.2d 181, 184 (1969); *Winters v. State,* 200 Ind. 48, 50–51, 160 N.E. 294, 294–95 (1928). Indiana courts have also long

held that the State's power to dismiss and refile may not be used to evade the defendant's speedy trial rights. *See Burdine,* 515 N.E.2d at 1090; *Maxey v. State,* 265 Ind. 244, 353 N.E.2d 457, 461 (1976); *Dennis v. State,* 412 N.E.2d 303, 304 (Ind.Ct.App.1980).

■ The State may not refile if doing so will prejudice the substantial rights of the defendant. *See Joyner,* 678 N.E.2d at 394; *Willoughby,* 660 N.E.2d at 578; *Dennis,* 412 N.E.2d at 304. Speedy trial and jeopardy rights are two specific examples of substantial rights which cannot be prejudiced. While we have not specifically defined what a substantial right is in other contexts, it is relatively clear what situations do not necessarily prejudice a defendant's substantial rights. For example, the State does not necessarily prejudice a defendant's substantial rights if it dismisses the charge because it is not ready to prosecute and then refiles an information for the same offense. *See Johnson,* 246 N.E.2d at 183–84; *Dennis,* 412 N.E.2d at 304–05. Also, the State does not necessarily prejudice a defendant's substantial rights by dismissing an information in order to avoid an adverse evidentiary ruling and then refiling an information for the same offense. *See Joyner,* 678 N.E.2d at 392–94.[2] Furthermore, the State does not necessarily prejudice a defendant's substantial rights when, on the refiled information, it amends the original information but charges the same offense. *See Willoughby,* 660 N.E.2d at 576–78; *Maxey,* 353 N.E.2d at 460–61.[3] The defendant's substantial rights are not prejudiced in these situations primarily because the defendant can receive a fair trial on the same facts and employ the same defense in the second trial as in the first. *See Willoughby,* 660 N.E.2d at 578; *Maxey,* 353 N.E.2d at 461; *State v. Joyner,* 482

---

**2.** In *Joyner,* the original trial court granted the defendant's motion to suppress evidence. *Joyner,* 678 N.E.2d at 393. The State dismissed the case and then refiled for the same offense, murder, in a different court. *Id.* at 393. The defendant again argued to suppress the evidence but lost. *Id.*

**3.** In *Willoughby,* the State originally charged the defendant with conspiracy to commit murder, the duration of which was alleged to have been between June 28, 1991 and July 1, 1991. *Wil-*

*loughby,* 660 N.E.2d at 577. When, after dismissal, the State filed the second information with the same court, the State "expanded the time span of the conspiracy by eleven days, from June 17, 1991 through July 1, 1991." *Id.* In *Maxey,* the original indictment charged that the offense had occurred on September 10, 1974. *Maxey,* 353 N.E.2d at 460. When, after dismissal, the State filed the second information with the same court, the State changed the date of the offense in order to avoid the defendant's alibi defense. *Id.* at 461.

N.E.2d 1377, 1379 (Ind.Ct.App.1985). Public policy favors the prosecution of persons accused of criminal offenses when a fair trial is available. *See Gregor v. State,* 646 N.E.2d 52, 54 (Ind.Ct.App.1994).

While courts have allowed the State significant latitude in filing a second information, the State cannot go so far as to abuse its power and prejudice a defendant's substantial rights. In the present case, the State received an adverse ruling in the original trial court on its motion to amend the information. As a result, defendant had to defend against one count of murder. In response, the State dismissed the case and filed a second information which contained four counts: the original murder count plus the felony murder, attempted robbery, and auto theft counts. Then, for no apparent reason other than because the State knew that the court had already ruled that the State could not include those additional three counts in the information, the State moved for and was granted transfer to a different court. By doing so, the State not only crossed over the boundary of fair play but also prejudiced the substantial rights of the defendant. Because of a sleight of hand, the State was able to escape the ruling of the original court and pursue the case on the charges the State had sought to add belatedly. This is significantly different than what has been permitted in the past. Therefore, the trial court erred in denying defendant's motion to dismiss the felony murder, attempted robbery, and auto theft charges. We reverse the convictions on those charges.

## II.

▬ Defendant next argues that the evidence presented at trial was insufficient to sustain his convictions. Defendant claims that the only connection between him and the crime is the testimony of the State's main witness, Byron Smith. Defendant further contends that Smith gave different versions of the story which contradict each other to such an extent that he is unbelievable as a witness. Defendant concludes, therefore, that his convictions are not supported by the evidence.

▬ When addressing a sufficiency of the evidence claim, an appellate court neither reweighs the evidence nor judges the credibility of the witnesses. *Bradford v. State,* 675 N.E.2d 296, 298 (Ind.1996). Instead, the court need examine the evidence most favorable to the verdict, and all reasonable inferences to be drawn therefrom. *Kingery v. State,* 659 N.E.2d 490, 493 (Ind.1995). If, from this examination, we determine that a rational trier of fact could have found guilt beyond a reasonable doubt, then we will sustain the convictions. *Id.*

▬ In the present case, defendant asks that we reassess the credibility of the witness. As stated above, we generally cannot do this because it is the jury's responsibility to judge the credibility of the witness. *Tillman v. State,* 642 N.E.2d 221, 223 (Ind. 1994). This Court may impinge upon that responsibility only when confronted with " 'inherently improbable' testimony or coerced, equivocal, wholly uncorroborated testimony of 'incredible dubiosity.' " *Id.* (citing *Rodgers v. State,* 422 N.E.2d 1211, 1213 (Ind.1981)). If this Court is confronted with a situation where "a sole witness presents inherently contradictory testimony which is equivocal or the result of coercion and there is a complete lack of circumstantial evidence" of defendant's guilt, then we may find that no reasonable person could believe the testimony, and we may reverse the trial court's decision. *Tillman,* 642 N.E.2d at 223; *see Bradford,* 675 N.E.2d at 300. The testimony of an accomplice is alone enough to sustain a conviction. *See Campbell v. State,* 500 N.E.2d 174, 179 (Ind.1986).

▬ To support his claim that Smith's testimony is "incredibly dubious," defendant highlights numerous inconsistencies between the original statement that Smith gave to the police and the immunized testimony which Smith gave at trial. It is true that Smith gave some contradictory statements, and he even admits that he lied during the police statement in order to cover-up the robbery attempt. However, the fact that a witness, during his immunized testimony, gives statements which contradict earlier statements does not necessarily make the testimony incredibly dubious. *See Campbell,* 500 N.E.2d at 179. Though Smith had been granted testimonial immunity, there is no evidence that his testimony was the product of coer-

cion. Also, this is not a case where Smith's testimony is uncorroborated. Defendant's statement to the police contained many similarities to Smith's trial testimony. For example, both defendant and Smith agreed that they initially met Sargent at 30th and Sutherland; that they went to Sargent's house; that there was a struggle between Sargent and defendant and that the struggle was over a gun; that Sargent asked to be taken to the hospital; and that the three of them then drove to a place where there was a small hill. The renditions diverge significantly at this point. Defendant stated that he and Smith ran off and left Sargent in the car. Smith testified that he saw defendant shoot the victim. The jury was made aware of the inconsistencies and of Smith's immunity. There existed sufficient evidence for the jury to fulfill its responsibility and to find defendant guilty. See *Campbell*, 500 N.E.2d at 179; *Shields v. State*, 490 N.E.2d 292, 294–95 (Ind.1986); *Ollinger v. State*, 463 N.E.2d 1385, 1387 (Ind.1984).

### III.

■■ Defendant next argues that his convictions should be reversed because he received ineffective assistance of counsel during his trial. Specifically, defendant contends that his trial counsel's failure to introduce Smith's prior statement for impeachment purposes was ineffective assistance. Counsel did not attempt to introduce the prior statement during Smith's testimony. Instead, counsel attempted to introduce the statement during the investigating officer's testimony. The trial court sustained the State's hearsay objection. As a result, the statement was not introduced as evidence to impeach Smith.

■■ A successful ineffective assistance of counsel claim must fulfill both parts of the two part test as set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, defendant must show that his counsel's performance fell below an objective standard of reasonableness as measured by predominant professional norms. Second, defendant must show that his counsel's deficient performance so prejudiced him that he was deprived of a fair and reliable trial. *Spranger v. State*, 650 N.E.2d 1117, 1121 (Ind.1995).

■■ The failure of counsel to introduce the prior inconsistent statement of a witness does not alone meet the standards for reversal under an ineffective assistance of counsel claim. If counsel sufficiently alerts the jury to the inconsistencies of the witness' testimony through other means, then the failure to introduce the actual inconsistent statement does not amount to prejudice. See *Hicks v. State*, 631 N.E.2d 499, 501 (Ind.Ct. App.1994). If, for example, defense counsel cross-examines the witness concerning the prior inconsistent statements such that the jury is made aware of the inconsistencies, then defendant cannot show he was prejudiced. *Id.; see also Fugate v. State*, 608 N.E.2d 1370, 1372 (Ind.1993); *Olson v. State*, 563 N.E.2d 565, 568 (Ind.1990) (noting that trial counsel was not ineffective for failing to impeach a witness if the discrepancies in the witness' testimony were disclosed to the jury).

In the present case, defense counsel vigorously attacked Smith during cross-examination. Counsel first emphasized the fact that Smith was now testifying under a grant of immunity. Counsel next spent considerable time questioning Smith on the inconsistencies between his trial testimony and his original statement. For example, through questioning he got Smith to admit that he testified to a different series of events than those that he told in his original statement. As to specifics, counsel confronted Smith concerning his trial testimony that defendant pulled a BB gun on Sargent when they first encountered him whereas, in Smith's original statement, he said nothing about any gun at this point. Counsel also confronted Smith concerning his trial testimony that he and defendant were robbing Sargent, as opposed to his original statement that Sargent invited them over to his house to smoke marijuana. Counsel further confronted Smith with the fact that he testified that he was not in the living room when Sargent pulled out a gun, while, in his original statement, Smith said that he, Sargent, and defendant were together in the living room when the victim pulled out a gun. Counsel also confronted Smith concerning his testimony that he saw defendant shoot Sargent while in his original statement Smith said that he did not see defendant shoot

Sargent. Furthermore, during the State's questioning of Smith, Smith testified that his original statement was a lie to cover up the robbery attempt. Thus, even assuming, without deciding, that trial counsel was deficient in failing to offer into evidence the previous statement, defendant cannot show that this failure prejudiced him.

## IV.

Defendant's final argument is that the trial court committed three errors in sentencing him. First, defendant contends that the trial court erred in sentencing him for both murder and felony murder. Second, defendant contends that the court erred when it credited him with only 158 days of jail time served. Third, defendant contends that the trial court improperly enhanced his sentence.

During the sentencing hearing, the trial court sentenced defendant for the murder, attempted robbery, and auto theft convictions. The abstract of judgment, however, shows that defendant was to be sentenced for the felony murder conviction as well. Because we reverse the felony murder conviction, we need not address whether any error occurred..

■ The trial court stated during the sentencing hearing that defendant was entitled to 365 days of credit time. The abstract of judgment, however, shows only 158 days of credit time. As both defendant and the State note, defendant was arrested on July 14, 1994, and he was sentenced on July 14, 1995. He was never released from jail during that time. The State concedes that defendant should have been credited with 365 days of jail time, and we so hold. Ind.Code § 35–50–6–3 (1993).

In explaining why defendant should receive an enhanced sentence, the trial court found that two aggravating and no mitigating factors existed. The court first found as aggravating that defendant had a prior criminal history, as evidenced by juvenile adjudications of child molesting, which showed that he is in need of corrective treatment that can only be found in a prison setting. The court next found that "the devastation to the victim's family done by [defendant's] act is an aggravating factor." Defendant contends that the court erred in its application of

aggravating factors and that it erred in failing to find any mitigating factors.

■ Sentencing decisions are left to the sound discretion of the trial court, and we will review those decisions only for an abuse of discretion. *Morgan v. State*, 675 N.E.2d 1067, 1072 (Ind.1996). When a trial court enhances a presumptive sentence, the court's sentencing statement must identify all of the significant mitigating and aggravating circumstances, state the specific reason why each is considered aggravating or mitigating, and articulate the balancing process which determined that the aggravating circumstances outweighed the mitigating circumstances. *Jones v. State*, 675 N.E.2d 1084, 1087 (Ind.1996). A trial court may enhance a presumptive sentence based upon a single aggravating factor. *Fugate*, 608 N.E.2d at 1374.

■ A trial court may treat a defendant's juvenile record as an aggravating circumstance if the presentence investigation report contains specifics as to juvenile criminal activity and those specifics support evidence of a history of criminal activity. *See Harris v. State*, 617 N.E.2d 912, 916 (Ind. 1993); *Day v. State*, 560 N.E.2d 641, 643 (Ind.1990); *Jordan v. State*, 512 N.E.2d 407, 410 (Ind.1987); *Evans v. State*, 497 N.E.2d 919, 923 (Ind.1986). In the present case, the presentence investigation report specifically details defendant's juvenile charges and true findings, including one for child molesting. The trial court properly used this as evidence of criminal activity and as an aggravating factor.

■ By statute, the trial court shall also consider "any oral or written statement made by a victim of the crime" in determining what sentence to impose. Ind.Code § 35–38–1–7.1 (1993); *see Edgecomb v. State*, 673 N.E.2d 1185, 1199 (Ind.1996). However, when a court uses victim impact statements as aggravating circumstances in order to justify a sentence enhancement, the court must provide an explanation. *See Mitchem v. State*, 685 N.E.2d 671, 679–80 (Ind.1997). The murder of a person carries with it an expected impact upon the family members and other acquaintances of the victim. This im-

pact is accounted for in the presumptive sentence for murder. *Id.* In order to validly use victim impact evidence to enhance a presumptive sentence, the trial court must explain why the impact in the case at hand exceeds that which is normally associated with the crime. *See id.; see also Angleton v. State,* 686 N.E.2d 803, 815 (Ind.1997) (noting that the judge "discussed the effect of the murder on the families"). In the present case, the court provided no such explanation.

■ Defendant also argues that the trial court erred by failing to find mitigating factors. The trial court is not obligated to explain why it did not find a factor to be mitigating. *Widener v. State,* 659 N.E.2d 529, 533 (Ind.1995). Though defendant alleges some factors which he believes to be worth mitigating weight (for example his youth and the facilitation of the crime by the victim), the trial court was within its discretion to find that they were not significant mitigating circumstances.

The court properly found one aggravating circumstance, and that alone was sufficient to enhance the presumptive sentence. The trial court did not abuse its discretion by sentencing defendant to a sixty-year sentence on his murder conviction.

### CONCLUSION

Defendant's conviction and sentence for murder are affirmed. Defendant's convictions for felony murder, robbery, and auto theft are reversed.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.