Mark DUNCAN, Appellant–Defendant,

v.

STATE of Indiana, Appellee.

No. 82A04–0605–PC–237.

Court of Appeals of Indiana.

March 9, 2007.

Susan K. Carpenter, Public Defender of Indiana, Amy E. Karozos, Deputy Public Defender, Indianapolis, IN, Attorneys for Appellant.

Steve Carter, Attorney General of Indiana, Matthew D. Fisher, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Mark Duncan appeals the denial of his Petition for Post–Conviction Relief. He alleges ineffective assistance of appellate counsel [1] for failing to challenge the trial court's use of two stated aggravating circumstances in imposing the maximum sixty-five year sentence for murder and the maximum eight-year sentence for Robbery as a Class C felony and for making the sentences consecutive. The crimes for which Duncan was convicted took place in 1997, and he was sentenced in 1998.[2]

In affirming the convictions, our Supreme Court held that the evidence was sufficient for the murder conviction, that allegedly gruesome photographs of the vic-

---

1. Duncan's trial counsel also represented him in the direct appeal.

2. Duncan was convicted of assaulting the victim with a hammer causing severe injuries to the head from which the victim later died.

Immediately after the assault, Duncan and his co-defendant took the victim's truck and fled to Kentucky and then to Oklahoma where they were arrested.

tim were not unduly prejudicial, and that the sentences imposed for murder and for robbery did not violate principles of double jeopardy. *Duncan v. State*, 735 N.E.2d 211 (Ind.2000).

In this appeal, Duncan contends that his appellate counsel improperly failed to raise sentencing error with respect to the erroneously considered aggravating circumstances, and that had he done so, our Supreme Court would have afforded relief in the direct appeal. Additionally, he claims that counsel erroneously failed to argue that the sentence was manifestly unreasonable.[3]

■ In *Miller v. State*, 702 N.E.2d 1053 (Ind.1998), *cert. denied*, 528 U.S. 1083, 120 S.Ct. 806, 145 L.Ed.2d 679 (2000), in reviewing a denial of post-conviction relief, our Supreme Court treated the issue of sentencing error under an assertion of ineffective appellate counsel even though trial counsel had not raised the issue. The Court did not find a waiver of the sentencing issue by virtue of appellate counsel's failure to assert ineffective trial counsel. The *Miller* court cited and quoted *Woods v. State*, 701 N.E.2d 1208, 1220 (Ind.1998), *cert. denied*, 528 U.S. 861, 120 S.Ct. 150, 145 L.Ed.2d 128 (1999), decided two weeks before, for the proposition that "a claim of ineffective assistance of counsel, 'if not raised on direct appeal, may be presented in postconviction proceedings.'" 702 N.E.2d at 1059. The *Miller* court then proceeded to hold that "[b]ased on *Woods*, we find that Miller has not waived the issue of ineffective assistance of trial counsel." *Id.*

■ Under the holding in *Woods*, a post-conviction assertion of ineffective assistance of counsel may be made for the first time. We construe the holding in *Woods* to mean that this is so whether or not any direct appeal was taken, and if such direct appeal was taken, whether or not the allegation is couched in terms of ineffective trial counsel or ineffective appellate counsel. *See Carrington v. State*, 678 N.E.2d 1143, 1148 (Ind.Ct.App.1997), *trans denied.*

Certainly, if ineffective assistance is not waived by the failure of appellate counsel to raise a matter of defective performance by a different attorney representing defendant at trial, *see Miller*, 702 N.E.2d at 1059, it must necessarily follow that such issue is not waived when appellate counsel was also the trial attorney. Such is the clear message of *Woods*, in which the issues available upon direct appeal were limited to the issues framed by the motion to correct error filed by trial counsel.

The *Woods* court did not hold that an ineffective assistance of counsel claim *must* be presented by way of a post-conviction proceeding. It did say that an ineffective trial counsel argument is not lost by failure to raise it in a direct appeal. 701 N.E.2d at 1220. This refinement brought about by the *Woods* decision is most meaningful when appellate counsel was also trial counsel and could not be expected to assert his own incompetence on appeal.[4]

---

3. At the time of sentencing and at the time of the direct appeal, the reviewing court could revise a sentence if it was "manifestly unreasonable." *See* former Indiana Appellate Rule 17. Since that time, the rule has been amended so that relief is granted only if the sentence is "inappropriate in light of the nature of the offense and the character of the offender." Indiana Appellate Rule 7(B) (adopted effective Jan. 1, 2003).

4. Even under the pre-*Woods* case law, failure of appellate counsel to raise his own ineffectiveness as trial counsel did not constitute waiver of the ineffectiveness issue. *See Green v. State*, 557 N.E.2d 1032, 1036 (Ind.Ct.App. 1990); *Davis v. State*, 164 Ind.App. 331, 334, 328 N.E.2d 768, 771 n. 1 (1975).

In the case before us, the sentencing court relied upon four aggravating factors: (1) Duncan's criminal record consisting of three misdemeanors—a conversion, a theft, and leaving the scene of an accident; (2) the fact that at the time in question there were additional crimes committed;[5] (3) the brutal nature of the assault upon the victim; and (4) the fact that the victim lingered for approximately two months before he died.

■ We acknowledge that in our discussion in Parts I—III, *infra*, it might appear that we are reviewing the sentences imposed as if the issue were presented upon direct appeal. We wish to dispel any such implication. We are well aware that a post-conviction relief petitioner bears the burden to show entitlement to relief, and if such relief is denied, upon appeal he is challenging a negative judgment. *Bonner v. State*, 563 N.E.2d 1312, 1313 (Ind.Ct. App.1990), *trans. denied.* In the case before us, the State has chosen to address Duncan's argument upon appeal on its merits. We have done likewise. *See Lowery v. State*, 640 N.E.2d 1031, 1037 (Ind. 1994), *cert. denied*, 516 U.S. 992, 116 S.Ct. 525, 133 L.Ed.2d 432 (1995).

## I

### Criminal Record

■ Duncan's criminal record consisted of three non-violent misdemeanor convictions. However, the prior theft and conversion convictions are not wholly dissimilar to the auto theft/robbery offense involving the taking of the victim's truck

after the assault. Certainly, those prior offenses are not nearly of the gravity of the murder and robbery convictions here involved. Nevertheless, they reflect a disregard for the law and were appropriately considered by the sentencing court, albeit not greatly significant in terms of the crimes here committed. *See Wooley v. State*, 716 N.E.2d 919, 929 (Ind.1999).

■ It is true that a single aggravating factor may justify an enhanced sentence. *Davenport v. State*, 689 N.E.2d 1226, 1232 (Ind.1997), *aff'd upon reh'g*, 696 N.E.2d 870 (Ind.1998). However, as a general proposition, a single aggravator should not be used to both enhance a sentence and impose consecutive sentences. *Payne v. State*, 687 N.E.2d 252, 255 (Ind.Ct.App. 1997); *Staton v. State*, 640 N.E.2d 741, 743 (Ind.Ct.App.1994), *trans. denied.* We note that in the case before us, the court imposed the maximum sentence upon both convictions, and in addition ordered the sentences to be served consecutively.[6] With respect to Duncan's criminal record, we hold that although the sentencing court was justified in considering that record, it should not have been given significant weight.

■ At the post-conviction hearing, appellate counsel stated that he did not raise the issue of improper aggravators because he believed under the then-applicable state of the law, the sentencing court had virtually unlimited sentencing discretion and that he felt the issues which were presented were stronger than the issue concern-

---

5. In this respect, the "other crimes" to which the court alluded were unlawful use of drugs. However, it appears that the only evidence of drug usage at the time in question was as to Duncan's codefendant, Sonya Hulfachor, and the victim. There was no evidence that during the events at issue, Duncan was involved with drugs. The court also referred to the

theft of the victim's truck. In light of double jeopardy considerations, the court "merged" the auto theft into the robbery conviction which also alleged the taking of the truck.

6. Were this the only aggravating factor, it is very likely that we would substantially reduce the aggregate sentence imposed.

ing the aggravators as enumerated by the court. We are aware that *Bieghler v. State,* 690 N.E.2d 188, 194 (Ind.1997), *cert. denied,* 525 U.S. 1021, 119 S.Ct. 550, 142 L.Ed.2d 457 (1998), requires that, for reversal, a strategic decision by appellate counsel must be "unquestionably unreasonable." *See also Taylor v. State,* 840 N.E.2d 324, 338 (Ind.2006). Upon our review, we conclude that the issue here presented as to the aggravators used against Duncan was clearly far stronger than the double jeopardy argument raised upon direct appeal. Accordingly, we hold that, to this extent, counsel's representation on appeal was ineffective and was sufficiently prejudicial as to warrant partial reversal.

In doing so, we find *Taylor, supra,* to be instructive. There, the Supreme Court found appellate counsel to be reversibly ineffective for failure to raise several issues. *Id.* at 342. Among these issues was a contention made at the post-conviction level that the prior criminal history contained only misdemeanors, infractions, and incidents from his juvenile record. *Id.* at 341. The *Taylor* court held that such did not meet the standard of *Wooley* as to the "gravity, nature and number of prior offenses *as they relate to the current offense.*" *Id.* (internal citations and quotations omitted).

The same may be said as to the case before us even though as noted by the State, the *Wooley* decision was not issued until two months after Duncan filed his direct appeal brief. The State, therefore, accordingly and appropriately argues that failure to assert a *Wooley* test could not constitute ineffective assistance of appellate counsel.

■ Nevertheless, notwithstanding that a *Wooley* analysis is not appropriate to an

assessment of Duncan's criminal history, we adopt the following rationale drawn from *Taylor:*

> "Based on the Indiana authority available at the time of Taylor's sentence that supports the argument that some of the court's aggravators were improper and others were weak, Taylor's appellate counsel should have challenged Taylor's maximum sentence." 840 N.E.2d at 342.

In a situation, as here, in which appellate counsel represented the defendant at trial, a post-conviction court, and the appellate court reviewing a denial of post-conviction relief, might well exercise a less stringent standard to correct a prejudicial trial court sentencing determination.

## II

### *Other Crimes Committed*

■ In the joint sentencing statement as to both Duncan and the co-defendant, the court, in alluding to "other crimes," referenced unlawful use of drugs. However, the only evidence of drug usage at the time in question was as to co-defendant Sonya Hulfacor and the victim, and did not involve Duncan. This so-called "other crime" could not, therefore, be attributed to Duncan for purposes of enhancing his sentence or sentences.

■ In the sentencing statement, the court also referred to the theft of the victim's truck.[7] In this regard, it is well established that an enhanced sentence may not rest upon recitation of a material element of the crime being considered. *Townsend v. State,* 498 N.E.2d 1198, 1201 (Ind.1986); *Meagher v. State,* 726 N.E.2d 260, 267 n. 14 (Ind.2000) (citing *Townsend); Widener v. State,* 659 N.E.2d 529, 532 (Ind.1995) (citing *Townsend* ). Ac-

---

7. In light of double jeopardy considerations, the court "merged" the auto theft into the robbery conviction which also alleged the taking of the truck.

cordingly, the theft of the truck could not be used to enhance the robbery sentence.

## III

### Other Aggravating Circumstances

■ In sentencing Duncan, the court did not rely solely upon the defendant's criminal record nor upon drug usage. The court also explicitly noted the extremely brutal nature of the attack upon the victim and that the victim lingered for a period of approximately two months after the beating. The evidence reflected that when the victim was discovered in a pool of blood, his brain matter was protruding from the severe skull wounds. Some of that brain matter had leaked out onto the floor. The emergency room physician with twenty years of experience, as well as the attending neurosurgeon, testified that the victim's head wound was the most serious "ever seen inflicted upon an individual." Tr. at 342, 1265.

When coupled with the fact that the victim lingered in that state for approximately two months before dying, the facts amply support the court's assessment of the brutal nature of the crime and the lingering effect upon the victim. Therefore, we hold that notwithstanding the invalidity of one of the aggravators as to the robbery conviction and the relative weakness of the other aggravator challenged, the maximum enhancement of the murder sentence was appropriate.

### Conclusion

We conclude the sixty-five year sentence for murder was proper, but that Duncan's appellate counsel was ineffective for failing to present upon direct appeal the issue of the propriety of his maximum eight-year sentence for robbery. We remand with instructions for the trial court to reduce that sentence to the presumptive term of four years. Because there were two valid aggravators, the enhanced murder sentence did not rest solely upon a single aggravator which was then also used to impose consecutive sentences. For that reason, we find no defect in the imposition of consecutive sentences.[8] Duncan's appellate counsel was thus not ineffective for failing to present upon direct appeal the issues of his sentence for murder and the imposition of consecutive sentences. As revised, the sentences for the murder and for the robbery are to run consecutively, and we do not deem them to be manifestly unreasonable.

We affirm in part, reverse in part, and remand to enter sentences in accordance with this opinion.

ROBB, J., and BARNES, J., concur.

---

8. We note that the sentencing court considered as mitigating circumstances that Duncan was relatively young, had a minor child, and that members of his family gave strong testimony in favor of his character. Clearly, the court was entitled to and did find that the aggravators greatly outweighed the mitigators.