Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 06 2012, 9:27 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JEFFREY D. STONEBRAKER**
Clark County Chief Public Defender
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TIMOTHY L. BARNES, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 10A01-1201-CR-27 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE CLARK CIRCUIT COURT
The Honorable Daniel E. Moore, Judge
Cause No. 10C01-1107-FB-110

**September 6, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Timothy L. Barnes appeals his sentence for rape as a class B felony. Barnes raises two issues, which we revise and restate as:

I. Whether the court abused its discretion in sentencing Barnes; and

II. Whether his sentence is inappropriate in light of the nature of the offense and his character.

We affirm.

The relevant facts follow. On January 15, 2011, twenty-six-year-old J.B. took lortab and valium which were prescribed for her. Later that day, J.B. went to a bar in New Washington, Indiana to sing karaoke. J.B. noticed Tim Barnes, Junior ("Junior"), who was a friend and former classmate, and began talking with him. Junior's father, Barnes, whom J.B. had never met, and James Abney were also at the table. J.B. had some mixed drinks and at least one shot of whiskey. Abney observed J.B. drink "a lot," and Junior observed J.B. drink "quite a bit" and thought that she was "[p]retty inebriated." Transcript at 271, 288. The last thing J.B. remembered was being at the bar in the middle of singing a song and she did not remember leaving the bar.

Barnes, Junior, Abney, J.B., and Tiffany Waller left the bar and went to a second bar and then eventually went to Barnes's residence. J.B. was "extremely intoxicated because she was almost falling down" and lay down on the couch and "blacked out." Id. at 41, 288. When Junior went to bed around 2:00 or 3:00 a.m., J.B. was still "asleep or passed out on the couch." Id. at 289.

During the night, J.B. woke up and found Barnes on top of her having sexual intercourse with her. Barnes said: "You came here to get f-----, didn't you." Id. at 101. J.B. then passed out again. When J.B. woke up, she was groggy, disoriented, and her

2

pants and panties were down around one leg. Abney drove J.B. to the bar to retrieve her vehicle, and J.B. told Abney that she thought Barnes had raped her. J.B. felt as if she had been drugged and knew the feeling of being drugged as it had occurred several years earlier. J.B. then drove home, went back to sleep, and then went to the hospital. A sexual assault examination revealed redness in J.B.'s genital area which was indicative of sexual intercourse. Barnes's DNA was found on the internal and external swabs of J.B.'s genitalia.

On July 15, 2011, the State charged Barnes with rape as a class B felony, and a jury found Barnes guilty.[1] During the sentencing hearing, Barnes stated:

> Well, I would like to apologize to Jennifer for any pain that I may have caused her. I'm really starting to believe to myself that maybe she really does not believe, she does not remember what happened that night. For that I'm truly sorry. I hold no grudge against her in any way. I just hope if she does happen to start to remember anything in the future to come, that she will come forward and let the right people know. . . . My most biggest regret is I've lied to the police. If I would never have lied to the police, I don't believe I would be sitting here today. . . . I hope in the near future my children will be able to forgive me for this, for putting them through all of this, and I'm deeply, deeply sorry for anything, any pain that I have caused anybody involved in this.

Id. at 395. The court stated:

> Mr. Barnes, I heard your statement. Now, I want to tell you I just think it's incredible that after the evidence that was produced at trial, you make a statement to the Court that indicates that somehow this didn't happen and you suggest the victim might remember it more clearly at some time in the future. That is contrary to the evidence and with respect to the young people and your family members who have supported you, it is not credible to the Court for you to suggest that these facts are anything but true. What you did and what you did to this young woman while she was unconscious is proven by the jury and to the Court beyond a reasonable doubt and the

---

[1] The State also charged Barnes with incest as a class C felony, but Barnes filed a motion for severance and the incest charge was severed for the purposes of trial.

statement of remorse might have more appropriately apologized to that woman in more detail. You mentioned her name and you don't need to apologize to the Court or the Prosecutor, but the act you did and you perpetrated upon her is inexcusable, and how you explain that to your children and the females in your family is going to be left up to you, sir. The Court finds that it was a violent attack and the Court considers that the damage you caused was humiliating, was damaging, and was hurtful to the victim and there is no mitigating circumstance to eliminate that. When a man uses his position for a woman to perpetrate a sexual act upon a member of the opposite sex without their consent, it's a violation of the law. And when you do it when a person is unconscious, it is an aggravating violation of the law. The Court is going to find that your conduct, pursuant to that subsection, exhibited a callus disregard for the victim and the damage to her. The Court is going to find that throughout the investigation of this case you lied and you told half truths consistently to investigating police officers when you could have told the truth and this matter would have been more easily handled and managed. The Court is going to find additionally under Indiana Code 35-38-1-7.1 that the harm, injury, loss or damage suffered by the victim was significant and greater than the elements necessary to prove the commission of the offense. This type of crime is a personal crime. It deprives a person of dignity. It deprives a person of their complete feelings of control over themselves and their right to be free from a forceful intrusion of another person and for you to suggest that it's not true and it didn't happened and somehow cast blame to her is inappropriate and is not supported by the evidence. The Court is going to impose, and the Court's going to grant you time, incidentally, on this sentence of a hundred and fifty-three actual days, sir, the Court is going to grant you six months additional credit time for the GED if there's proof put in the file and it has been completed. The Court's going to find as a mitigating factor that you have no history of delinquency or criminal activity and other than the misdemeanor that we seem to be aware of and given there is no conviction of a charge that is yet to go to trial as of this point. Your military service is recognized. You've led a law abiding life in terms of felony commissions and convictions before this trial. The Court's going to find however that these aggravating circumstances I've mentioned in the record and those I've included under . . . subsection c, outweigh the mitigating factors that are in the record.

Id. at 396-399. The court sentenced Barnes to fifteen years with three years suspended to probation. The court also indicated that Barnes may serve the last year of his executed

4

sentence in the Work Release Program. The court also ordered that Barnes receive credit time of six months for obtaining his G.E.D.

## I.

The first issue is whether the court abused its discretion in sentencing Barnes. A trial court abuses its discretion if it: (1) fails "to enter a sentencing statement at all;" (2) enters "a sentencing statement that explains reasons for imposing a sentence—including a finding of aggravating and mitigating factors if any—but the record does not support the reasons;" (3) enters a sentencing statement that "omits reasons that are clearly supported by the record and advanced for consideration;" or (4) considers reasons that "are improper as a matter of law." Anglemyer v. State, 868 N.E.2d 482, 490-491 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (Ind. 2007). However, the relative weight or value assignable to reasons properly found, or those which should have been found, is not subject to review for abuse of discretion. Id. at 491.

Where, as here, the trial court's reason for imposing sentence includes a finding of aggravating and mitigating factors, they must be supported by the record and consistent with what our courts have traditionally deemed as either aggravators or mitigators. McDonald v. State, 868 N.E.2d 1111, 1113-1114 (Ind. 2007). "If the factors are not supported by the record or have been previously determined to be improper, then 'remand for resentencing may be the appropriate remedy if we cannot say with confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record.'" Id. at 1114 (quoting Anglemyer, 868 N.E.2d at 491).

5

A.    Mitigators

Barnes argues that the trial court abused its discretion by failing to consider that he was likely to respond affirmatively to probation or short term imprisonment as a mitigator, he had served in the military, and had obtained his G.E.D. while incarcerated on the charges.

The determination of mitigating circumstances is within the discretion of the trial court.  Rogers v. State, 878 N.E.2d 269 (Ind. Ct. App. 2007), trans. denied.  The trial court is not obligated to accept the defendant's argument as to what constitutes a mitigating factor, and a trial court is not required to give the same weight to proffered mitigating factors as does a defendant.  Id.

The record reveals that the court "recognized" Barnes's military service and also awarded Barnes six months of credit time for receiving his G.E.D.  Transcript at 399. The court also found as a mitigating factor that Barnes had no history of delinquency or criminal activity other than a misdemeanor.  Under the circumstances, we cannot say that the trial court abused its discretion with respect to Barnes's proposed mitigators.

B.    Aggravators

Barnes appears to argue that the court abused its discretion when it referred to his rape conviction as a violent offense because Ind. Code § 35-38-1-7.1(a)(4) requires that in order to be considered an aggravating circumstance, the crime must be committed in the presence of a person under eighteen years of age.[2]  Additionally Barnes argues that

---

[2] Ind. Code § 35-38-1-7.1 provides:

6

the court abused its discretion when it noted that J.B. was unconscious because her unconscious state was an element that the State was required to prove, and determined that the damage suffered by J.B. exceeded any mitigating circumstance without addressing any particular circumstances which would support such an opinion. Barnes also appears to argue that he has the right to maintain his innocence, that his statements at the sentencing hearing were an assertion that J.B. could not remember the incident and that the intercourse was consensual, and that the court's sentencing statement "certainly seems to reflect that it considered Barnes['s] lack of remorse and failure to accept responsibility by admitting guilt as factors which resulted in the imposition of a sentence above the advisory term." Appellant's Brief at 16. Barnes also contends that the court "seemed to suggest that if [he] had simply confessed to the alleged conduct the criminal case would have been more easily resolved," that the right of a criminal defendant to a trial by jury is unquestionable, and that "[a]s the court did not provide any specifics as to how Barnes['s] lies to the police had made the case more difficult to handle or manage

---

(a)    In determining what sentence to impose for a crime, the court may consider the following aggravating circumstances:

\* \* \* \* \*

(4)    The person:

    (A)    committed a crime of violence (IC 35-50-1-2); and

    (B)    knowingly committed the offense in the presence or within hearing of an individual who:

        (i)    was less than eighteen (18) years of age at the time the person committed the offense; and

        (ii)    is not the victim of the offense.

one has to conclude the court was referencing the need to conduct a trial to resolve the matter." Id. at 17.

The State argues that the court was not limited to the definition found in Ind. Code § 35-38-1-7.1(a)(4) in determining an aggravating circumstance and that Ind. Code § 35-38-1-7.1(c) provides that the trial court is not limited in what it may consider in determining the sentence to impose.[3] The State argues that "[w]hile J.B.'s unawareness was an element of the crime, the extreme nature of her unconsciousness was part of the nature and circumstances of the crime and, therefore, was, in this case, a proper aggravating circumstance." Appellee's Brief at 9. The State argues that the mental and emotional harm Barnes caused to J.B. was significant and greater than the elements necessary to prove the commission of the offense and was a valid aggravating circumstance. The State also argues that Barnes has failed to establish that the trial court's finding of his lack of remorse as an aggravating circumstance was error. The State also argues that the court's reliance on Barnes's dishonesty is supported by Barnes's own statements in which he acknowledged that he lied to the police.

Even assuming that the trial court abused its discretion with respect to some of the aggravators, we observe that the court properly found the impact on J.B. as an aggravator. Ind. Code § 35-38-1-7.1 provides that "[i]n determining what sentence to impose for a crime, the court may consider the following aggravating circumstances . . . The harm, injury, loss, or damage suffered by the victim of an offense was . . . significant; and . . . greater than the elements necessary to prove the commission of the offense." Generally,

_____

[3] Ind. Code § 35-38-1-7.1(c) provides: "The criteria listed in subsections (a) and (b) do not limit the matters that the court may consider in determining the sentence."

the impact that a victim or a family experiences as a result of a particular offense is accounted for in the advisory sentence. Mitchem v. State, 685 N.E.2d 671, 678 (Ind. 1997). "In order to validly use victim impact evidence to enhance a presumptive sentence, the trial court must explain why the impact in the case at hand exceeds that which is normally associated with the crime." Davenport v. State, 689 N.E.2d 1226, 1233 (Ind. 1997), clarified on reh'g on other grounds. "It is settled law that where '[t]here is nothing in the record to indicate that the impact on the families and victims in this case was different than the impact on families and victims which usually occur in such crimes,' this separate aggravator is improper." McElroy v. State, 865 N.E.2d 584, 590 (Ind. 2007) (quoting Mitchem v. State, 685 N.E.2d 671, 680 (Ind. 1997)).

The record reveals that J.B. testified that she had a nightmare almost every night until Barnes was arrested and that she still wakes up screaming, covered in sweat, and crying. She testified that she has nightmares of what Barnes said to her when he was raping her. At the sentencing hearing, J.B. testified that the offense changed her life forever for the worse and Barnes's action had sentenced her to "an entire life time of fear, pain and hurt." Transcript at 382. The presentence investigation report reveals that J.B. was still having nightmares, that this affected the way that she "deal[s] with everything especially [her] children," that J.B. has no money for counseling, and that J.B. lost her job "because of all the time off for court." Appellant's Appendix at 247. As mentioned by the State, it is expected that a victim would endure a certain amount of emotional and psychological trauma due to being a rape victim, but constant nightmares, fear, and loss

9

of one's job due to the crime are well beyond the emotional and psychological trauma usually associated with the crime.

In light of the aggravator of the impact of the offense on J.B., we can say with confidence that the trial court would have imposed the same sentence had it considered only this aggravator. See, e.g., Drakulich v. State, 877 N.E.2d 525, 535 (Ind. Ct. App. 2007) (holding that we could say with confidence that the trial court would have imposed the same sentence if it considered only the proper aggravators), trans. denied.

## II.

The next issue is whether Barnes's sentence is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

Our review of the nature of the offense reveals Barnes performed sexual intercourse on J.B. while she was unconscious. When J.B. woke up, Barnes said: "You came here to get f-----, didn't you," before J.B. blacked out again. Transcript at 101. The record reveals that J.B. has had repeated nightmares, that the rape affected the way that she "deal[s] with everything especially [her] children," that J.B. has no money for counseling, and that J.B. lost her job "because of all the time off for court." Appellant's Appendix at 247.

Our review of the character of the offender reveals that Barnes was born in 1966 and has no prior felony convictions. In 1995, he was charged with public intoxication and invasion of privacy, but these charges were later dismissed. In 2005, Barnes pled guilty to possession of marijuana as a class A misdemeanor. Also, in 2005, Barnes was charged with dealing in methamphetamine, but the charge was later dismissed. In 2010, Barnes was charged with residential entry as a class D felony and carrying a handgun without a permit and these charges were pending at the time of the presentence investigation report. Barnes reported obtaining his G.E.D. while incarcerated for the present offense. He reported serving in the Gulf War and being in the U.S. Army Reserves from 1984 to 1992. At the sentencing hearing, Barnes admitted that he lied to the police during the investigation.

After due consideration of the trial court's decision, we cannot say that the sentence of fifteen years with three years suspended and the last year of the executed portion of the sentence being served in the Work Release Program is inappropriate in light of the nature of the offense and the character of the offender.

For the foregoing reasons, we affirm Barnes's sentence for rape as a class B felony.

Affirmed.

FRIEDLANDER, J., and PYLE, J., concur.

11