James E. WINGATE, Appellant–Petitioner,

v.

STATE of Indiana, Appellee–Respondent.

No. 80A05–0804–PC–221.

Court of Appeals of Indiana.

Jan. 30, 2009.

Daniel K. Whitehead, Yorktown, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Nicole M. Schuster, Deputy Attorney General Indianapolis, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

Appellant–Petitioner James Wingate appeals the denial of his petition for postconviction relief ("PCR"). Specifically, Wingate claims that his trial counsel rendered ineffective assistance by failing to object and move to dismiss the State's filing of additional charges on the sixty-ninth day following his early trial request and by failing to object to the introduction of certain evidence at trial. We affirm.

## FACTS AND PROCEDURAL HISTORY

Our opinion in Wingate's direct appeal instructs us as to the underlying facts leading to this post-conviction appeal:

> James Wingate lived in his mother's basement along with his girlfriend, Amanda Parsons. On February 15, 2005, Wingate sawed off the barrel of a shotgun at his residence, which was overheard by Wingate's mother, Marlo Milligan. Later that day, Parsons advised Wingate to dispose of the sawed-off shotgun due to his mother, Milligan, being upset. After Wingate retrieved the shotgun from the house, Milligan called the Sheriff to report her son possessing the weapon. Wingate drove to a pond near his mother's home and threw the shotgun into the water.
>
> On February 23, 2005, a Tipton County Deputy Sheriff drove to Milligan's residence concerning an alleged domestic disturbance. An investigation was conducted, and Wingate was arrested. The next day, Parsons met the same Deputy Sheriff at the nearby pond to point out the location where she had seen Wingate throw the shotgun. A dive team later located the shotgun in the pond enclosed in a plastic bag.

*Wingate v. State*, No. 80A02-0509-CR-887, 846 N.E.2d 1121 (Ind.Ct.App. Apr. 28, 2006).

On February 24, 2005, the State charged Wingate with Count I, Class D felony criminal confinement, Count II, Class D felony intimidation, and Count III, Class A misdemeanor domestic battery. Counts I through III related to Wingate's actions toward Parsons on February 22, 2005. On March 2, 2005, Wingate, who remained incarcerated, requested a speedy trial pursuant to Rule 4(B) of the Indiana Rules of

Criminal Procedure. Trial was set for May 10, 2005.

On May 10, 2005, the State moved to dismiss Counts I through III with prejudice. The trial court granted the State's motion, ordered that Wingate's prior bond set in connection with Counts I through III be released, and stated that the previous bond order was null and void. Also on May 10, 2005, the State charged Wingate, under the same cause number, with Count IV, Class D felony dealing in a sawed-off shotgun and Count V, Class B felony serious violent felon in possession of a firearm. Counts IV and V related to events that occurred on February 15, 2005. Wingate again requested a speedy trial, and a jury trial for the new charges was set for July 12, 2005. At the conclusion of his July 12, 2005 jury trial, Wingate was found guilty of Class B felony serious violent felon in possession of a firearm. Wingate was sentenced to fifteen years in the Department of Correction, with five years suspended to probation.

On March 16, 2007, Wingate filed a verified petition for PCR alleging that he received ineffective assistance of counsel at trial. Following a hearing on Wingate's petition, the post-conviction court entered findings of fact and conclusions thereon denying Wingate's petition.

## DISCUSSION AND DECISION

### I. Standard of Review

■ Post-conviction proceedings are civil proceedings that provide defendants the opportunity to raise issues not known or available at the time of the original trial or direct appeal.... If a claim of ineffective assistance of trial counsel was not raised on direct appeal, that claim is properly raised at a post-conviction proceeding. In post-conviction proceedings, the defendant bears the burden of proof by a preponderance of the evidence.

We review the post-conviction court's factual findings under a 'clearly erroneous' standard but do not defer to the post-conviction court's legal conclusions. We will not reweigh the evidence or judge the credibility of the witnesses; we examine only the probative evidence and reasonable inferences that support the decision of the post-conviction court. *Stephenson v. State*, 864 N.E.2d 1022, 1028 (Ind.2007) (citations omitted). Appellate review of the post-conviction court's decision is narrow. *Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind.2006). "We give great deference to the post-conviction court and reverse that court's decision only when 'the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post[-]conviction court.' " *Id.* (quoting *Prowell v. State*, 741 N.E.2d 704, 708 (Ind.2001)).

### II. Ineffective Assistance of Trial Counsel

■ On appeal, Wingate contends that his trial counsel rendered ineffective assistance by failing to object to or move to dismiss the State's filing of additional charges on the sixty-ninth day following his early trial request and by failing to object to the introduction of certain evidence at trial.

Claims of ineffective assistance of trial counsel are generally reviewed under the two-part test announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Thus, a claimant must demonstrate that counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms, and that the deficient performance resulted in prejudice. Prejudice occurs when the defendant demonstrates that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability arises when there is a probability sufficient to undermine confidence in the outcome.

*Id.* (citations and quotations omitted).

## A. Failure to Object to Additional Charges

■ Wingate contends that he suffered substantial prejudice as a result of his trial counsel's deficient performance. Specifically, Wingate notes that his trial counsel failed to move to dismiss Counts IV and V which were filed by the State on the sixty-ninth day following his request for a speedy trial pursuant to Rule 4(B) of the Indiana Rules of Criminal Procedure and claims that he was prejudiced thereby. Rule 4(B) provides the following:

If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar.

Wingate relies upon *State v. Roberts,* 171 Ind.App. 537, 358 N.E.2d 181 (1976), *Davenport v. State,* 689 N.E.2d 1226 (Ind. 1997), and *Pruett v. State,* 617 N.E.2d 980 (Ind.Ct.App.1993) in support of his contention that his trial counsel rendered deficient performance by failing to object to the new charges under Rule 4(B).

In *Roberts,* this court concluded that the State had violated the spirit of Rule 4(B) by holding the defendant for fifty days before bringing charges or allowing the defendant to appear before the trial court, concluding that "the application of CR.4 must be predicated upon the presumption that the State will be diligent in charging defendants." 171 Ind.App. at 540–41, 358 N.E.2d at 183. Having concluded that the State "abrogated its responsibility and plac[ed] [defendant] in an inert position," this court affirmed the trial court's dismissal of the charges eventually levied against the defendant. *Id.* at 542, 358 N.E.2d at 184. In relying on this court's conclusions in *Roberts,* Wingate claims that *Roberts* mandates the dismissal of the additional charges levied against him in the instant matter. We disagree.

The facts presented in *Roberts* are readily distinguishable from the facts presented in the instant matter. In *Roberts,* defendant was held in the Indiana Boys School for fifty days before the State filed charges against the defendant and before the defendant appeared before the trial court, effectively denying defendant the opportunity to request a speedy trial. *Id.* at 538–39, 358 N.E.2d at 182. Here, Wingate was arrested on February 23, 2005, and charged with Counts I through III on February 24, 2005. Wingate requested a speedy trial on March 2, 2005, seven days after his arrest and six days after charges for Counts I through III were filed. The evidence establishes that the State filed charges for Counts I through III against Wingate on the day after his arrest and also that Wingate requested a speedy trial less than one week after he was charged with Counts I through III. Wingate has failed to show any delay in filing charges or that he was not afforded the opportunity to request a speedy trial. Therefore, we conclude that because there was no unexplained delay and Wingate was not denied the opportunity to request a speedy trial, the State's actions did not amount to a violation of the spirit of Rule 4(B).

In *Davenport*, the Indiana Supreme Court concluded that "while trial courts have allowed the State significant latitude in filing a second information, the State cannot go so far as to abuse its power and prejudice a defendant's substantial rights." 689 N.E.2d at 1230. *Davenport* establishes that while the State may move for the dismissal of charges at any time prior to trial, the State's power to dismiss and refile may not be used to evade the defendant's speedy trial request. 689 N.E.2d at 1229. The State may not refile if doing so will prejudice the substantial rights of the defendant. *Id.* *Davenport* further provides that the State does not necessarily prejudice a defendant's substantial rights "if it dismisses the charges because it is not ready to prosecute and then refiles an information for the same offense," "by dismissing an information in order to avoid an adverse evidentiary ruling and then refiling an information for the same offense," or "when, on the refiled information, it amends the original information but charges the same offense." *Id.* In relying on the Supreme Court's conclusions in *Davenport*, Wingate claims that the State's dismissal of Counts I through III and the refiling of these and additional charges violated his right to a speedy trial. Again, we are unpersuaded by Wingate's claim.

As was the case with *Roberts*, the facts presented in *Davenport* can also easily be distinguished from the facts presented in the instant matter. In *Davenport*, the defendant was charged with one count of murder on July 14, 1994. *Id.* at 1228–29. Four days prior to trial, the State filed a motion to amend the charging information to add charges of felony murder, attempted robbery, and auto theft. *Id.* at 1229. After the trial court denied the State's motion, the State dismissed the murder charge and refiled it, along with the three new charges. *Id.* Additionally, "for no apparent reason other than because the State knew that the court had already ruled that the State could not include those additional three counts in the information, the State moved for and was granted a transfer to a different court." *Id.* The Supreme Court concluded that the State's actions "not only crossed over the boundary of fair play but also prejudiced the substantial rights of the defendant." *Id.*

Here, Wingate claims that, like in *Davenport*, the prosecutor impermissibly impinged upon the exercise of his substantial rights by dismissing and refiling the original charges in order to evade an adverse trial court ruling and, in the process, piling on additional charges that were unjustified by changed circumstances. The record establishes, however, that the State did not refile any of the dismissed charges, but rather filed two new charges that were factually independent of the original charges. Furthermore, unlike in *Davenport*, nothing in the record suggests that the State's actions were purposefully taken in order to deprive Wingate of his substantial rights or to evade an adverse ruling by the trial court. Therefore, because the State did not refile any of the dismissed charges but rather filed new charges that were factually independent of the original charges, we conclude that *Davenport* is inapplicable to the case at hand.

In *Pruett*, this court provided that the State "may not attempt 'to do indirectly what the lack of speedy trial prevented [it] from doing directly.'" 617 N.E.2d at 982 (quoting *State v. Tharp*, 406 N.E.2d 1242, 1245 (Ind.Ct.App.1980)). *Pruett* established that "the filing of separate, factually-related changes is viewed as one continuous prosecution," and therefore the time limitations relating to the defendant's right to a speedy trial begin to run with the first charge. *Id.* "However, where the State files subsequent charges based upon facts

separate and distinct from those charged in the original information, [this] rule is inapplicable." *Id.* In relying on *Pruett,* Wingate claims that the additional charges were substantially based upon the same facts as the original charges. Once more, we disagree.

Here, Wingate claims that Counts IV and V are substantially based upon the same facts as Counts I through III. However, the record establishes that Counts IV and V are based on one or more facts separate and unique from Counts I through III. Counts I through III relate to an alleged domestic disturbance at Wingate's residence on February 23, 2005, while the new charges, Counts IV and V, relate to Wingate's behavior and possession of a sawed-off shotgun on February 15, 2005. Because Counts IV and V were factually independent of Counts I through III, we conclude that the rule providing that the time limitations relating to the defendant's right to a speedy trial begin to run with the first charge is inapplicable to the case at hand. *See id.* Therefore, Rule 4(B) does not operate to bar prosecution of Counts IV and V. *See id.*

Additionally, we observe that here, the State's motion to dismiss Counts I through III, with prejudice, was granted by the trial court on May 10, 2005. At that time, the State ordered that Wingate be released and that his prior bond set in connection with Counts I through III was null and void. "Once released from custody, a defendant receives no further benefit from Crim. R. 4(B)." *Williams v. State,* 631 N.E.2d 485, 487 (Ind.1994). Wingate therefore received no further benefit from Rule 4(B) after he was released from custody with respect to Counts I through III.

Moreover, the State was not required to drop the original charges before filing Counts IV and V. These additional charges, which were wholly unrelated to Counts I through III, could have been filed at any time within the five-year statute of limitations following the commission of Class B and Class D felonies. *See* Ind. Code § 35–41–4–2 (2005). On May 10, 2005, the State could have either tried Wingate on Counts I through III or simply allowed the charges to be dismissed and later filed Counts IV and V without any concern for violating Wingate's speedy trial request. We are unconvinced that the State violated Wingate's speedy trial request merely because Counts IV and V were filed on the same day that the original charges were dismissed.

Having concluded that the State did not violate the spirit of Rule 4(B) by causing a delay in either filing charges or providing Wingate the opportunity to appear before the trial court, that the State did not refile the original charges, and that the State did not violate Rule 4(B) by filing Counts IV and V on the sixty-ninth day following Wingate's speedy trial request because the subsequent charges were based upon facts separate and distinct from those charged in the original charges, we further conclude that Wingate failed to show that he suffered any prejudice as a result of his trial counsel's representation. Thus, Wingate's trial counsel did not render ineffective assistance by failing to challenge the additional unrelated charges that were filed by the State on May 10, 2005. *See Grinstead,* 845 N.E.2d at 1031.

### B. Failure to Object to Evidence

 Wingate also contends that his counsel rendered deficient performance by failing to object to the introduction of certain evidence at trial under Indiana Evidence Rules 404(a) and (b). Specifically, Wingate claims that his trial counsel rendered ineffective assistance by failing to object to the testimony of Parsons relating to his current incarceration and the alleged domestic battery, the testimony of

Milligan relating to prior threats and a prior theft, and the testimony of Tipton County Sheriff's Deputy Scott Brumley relating to his investigation into allegations of domestic abuse and Wingate's subsequent arrest.

■■ Initially, we note that Wingate failed to provide a cogent argument in support of his assertion that the evidence in question would be deemed inadmissible under either Evidence Rule 404(a) or (b). Wingate merely provides a one-sentence summary of each of the evidence rules without providing any cogent argument with respect to the admissibility of the testimony in question. "A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record." *Davis v. State,* 835 N.E.2d 1102, 1113 (Ind.Ct.App.2005), *trans. denied; see also* Ind. Appellate Rule 46(A)(8) (requiring that contentions in appellant's briefs be supported by cogent reasoning and citations to authorities, statutes, and the appendix or parts of the record on appeal). Therefore, Wingate has waived this claim by failing to provide a cogent argument in support of his claim.

■ Waiver notwithstanding, Wingate's claim fails. A claim for "[i]neffective representation based upon counsel's failure to object requires a showing that had a proper objection been made the trial court would have had no choice but to sustain it." *Williams v. State,* 489 N.E.2d 594, 598 (Ind.Ct.App.1986). Wingate has failed to present any cogent argument proving that had his trial counsel objected to the testimony in question, the trial court would have had no choice but to sustain the objection. Therefore, Wingate has failed to make a showing that any objection to the testimony by his trial counsel would have been sustained. *See id.*

■ Additionally, upon review of a claim of ineffective assistance of counsel, "[c]ounsel is afforded considerable discretion in choosing strategy and tactics, and we will accord that decision deference." *Hart v. State,* 889 N.E.2d 1266, 1272 (Ind. Ct.App.2008). Here, Wingate submitted an affidavit of his trial counsel at the post-conviction hearing, which provided the following:

2. I was trial counsel, assigned to represent the defendant, James E. Wingate in the above referenced cause.

3. I have never seen a transcript of the trial or any other proceeding in this cause of action, and I have very little independent recollection of the statements made at trial or the strategy used in representing the defendant, other than some notes that I have reviewed.

4. The only reason the question[ing] of Amanda Parsons by the State, regarding uncharged/unproven bad acts of the defendant, might have been permitted with[out] objection, would have been because the defendant wanted to impeach Amanda Parson's [sic] credibility for making those previous statements and/or police reports which she later recanted, or simply refused to either cooperate with law enforcement and/or testify as to those prior acts.

5. Prior to trail, [sic] I did discuss the State's evidence with Mr. Wingate and possible defenses with him, and I believe that I was competent in my representation of Mr. Wingate.

6. Without checking the transcript, I have some vague recollection that either I did, or I attempted to call Amanda Parsons as a witness on defendant's behalf at sentencing for the purpose of getting her to testify under oath that she had perjured herself, but I thought the court refused to hear such testimony.

PCR Petitioner's Ex. 1. Trial counsel's affidavit indicates that after discussing the State's evidence with Wingate, the defense made the strategic decision not to object to the testimony in question, and we defer to trial counsel's decision. Because Wingate has failed to prove that the trial court would have had no choice but to sustain any objection to the testimony in question and in light of the tactical decision made by Wingate and his counsel not to object to the testimony, we conclude that Wingate's trial counsel did not render deficient representation in this regard.

In sum, having concluded that Wingate's trial counsel did not render deficient representation for failing to object to the filing of two additional, factually independent charges on the sixty-ninth day following Wingate's request for a speedy trial or for failing to object to the admission of certain evidence at trial, we affirm the judgment of the postconviction court.

The judgment of the post-conviction court is affirmed.

FRIEDLANDER, J., and MAY, J., concur.