**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



**FILED**

May 31 2013, 9:33 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**HILARY BOWE RICKS**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DONTE CARTER, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1209-CR-766 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Lisa F. Borges, Judge
Cause No. 49G02-1101-MR-5457

**May 31, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Donte Carter appeals his aggregate seventy-two-year sentence for Murder[1] and class C felony Attempted Robbery.[2] Carter presents the following restated issues for our review:

1. Did the trial court abuse its sentencing discretion by overlooking significant mitigating factors?

2. Is Carter's sentence inappropriate in light of the nature of the offense and the character of the offender?

We affirm.

On the morning of December 16, 2010, Jasmine White, White's one-year-old twins, Shareya Patrick, and Patrick's two-year-old niece were at the Indianapolis apartment where White had been staying. They were later joined by White's friend, Tae-Rell Ewing and Ewing's boyfriend, Jwaun Poindexter. The group spent some time talking and playing cards, and then Poindexter left. While Poindexter was gone, Camisha Williams, Jordan Cole, and Kailuv Chew arrived at the apartment, and shortly thereafter, Cesar Rodenzo joined the group.

Meanwhile, across town, Landon Canady and his girlfriend Deandra Wilson picked up Cameron Moore. Canady then spoke to Poindexter on the phone, and Poindexter told Canady that there was marijuana in White's apartment and that they should come and take it because there were only women present. The group headed toward the apartment, and stopped on the way to pick up Carter. Canady, Wilson, Moore, and Carter then picked up

---

[1] Ind. Code Ann. § 35-42-1-1 (West, Westlaw current through P.L. 135 with effective dates through April 30, 2013).

[2] I.C. § 35-42-5-1 (West, Westlaw current through P.L. 135 with effective dates through April 30, 2013) (robbery); Ind. Code Ann. § 35-41-5-1 (West, Westlaw current through P.L. 135 with effective dates through April 30, 2013) (attempt).

2

Poindexter in a parking lot near the apartment complex, and the group proceeded to the apartment. The group agreed that Poindexter would enter the apartment and leave the door unlocked so the other three men could enter, and all four men approached the apartment while Wilson remained in the car. When they got close to the apartment, Poindexter instructed the men not to hurt anyone, and Moore attempted to back out of the robbery. Carter then pulled out a gun and pointed it at Moore to compel him to take part. None of the other men displayed a gun.

Poindexter then entered the apartment and left the door cracked open. White, Patrick, Chew, Cole, Williams, Ewing, Rodenzo, and the three children were all still present. As planned, Canady, Moore, and Carter then burst into the apartment and shouted for everyone to get down, and one of the perpetrators demanded the victims' cell phones. At that point, Rodenzo, who had been standing behind the door when the men entered, ran out the open door and down the hallway. Carter chased after Rodenzo, followed by Canady and Moore, and witnesses heard one or two gunshots fired. Canady, Moore, and Carter then ran out of the building and walked back to the car where Wilson was waiting. Canady and Moore shouted at Carter, asking him why he had shot Rodenzo. Carter, who still had the gun in his possession when he returned to the car, did not respond.

After Canady, Moore, and Carter left, White quickly locked the door, hid the children in a closet in the back bedroom, and called 911. When police arrived, they found a bullet in the wall at the bottom of the staircase leading to the rear exit of the apartment building, as well as a shell casing just outside the exit. While police were investigating, a neighbor from

3

the building just south of White's called police and reported that a man was lying face down outside his front door. When police responded, they discovered Rodenzo's lifeless body. He had been shot in the back.

On January 25, 2011, the State charged Carter with felony murder occurring during an attempted robbery and attempted robbery as a class A felony. On February 16, 2011, the State amended the charge to add a count of murder. A two-day jury trial commenced on August 20, 2012, and at the conclusion of the evidence, Carter was found guilty as charged. A sentencing hearing was held on August 31, 2012, at which the trial court merged the felony murder conviction into the murder conviction and reduced the attempted robbery conviction to a class C felony. The court then sentenced Carter to consecutive terms of sixty-four years for murder and eight years for attempted robbery, for an aggregate sentence of seventy-two years. Carter now appeals.

1.

At the outset, we note that Carter presents his arguments that the trial court abused its discretion in sentencing him and that his sentence is inappropriate pursuant to Ind. Appellate Rule 7(B) as a single issue.[3] This court has clarified that appellate review for an abuse of

---

3 Additionally, Carter devotes three sentences at the end of his brief to an argument that his sentence violates Article 1, sections 16 and 18 of the Indiana constitution, which respectively provide that "[a]ll penalties shall be proportioned to the nature of the offense" and "[t]he penal code shall be founded on the principles of reformation, and not of vindictive justice." Carter simply quotes these provisions, makes a conclusory statement that his seventy-two-year sentence "fulfills neither of these goals[,]" and asks us to revise his sentence accordingly. *Appellant's Brief* at 9. Because Carter has made no attempt to analyze his sentence under the framework of the constitutional provisions he cites, his argument in this regard is waived for failure to make a cogent argument. *See Wingate v. State*, 900 N.E.2d 468 (Ind. Ct. App. 2009) (concluding that an issue was waived where the defendant summarized the rules but did not make a cogent argument regarding the application of the rules).

discretion in sentencing and pursuant to App. R. 7(B) are distinct inquiries. *See King v. State*, 894 N.E.2d 265, 267 (Ind. Ct. App. 2008) (observing that "[a]s our Supreme Court has made clear, inappropriate sentence and abuse of discretion claims are to be analyzed separately"). Carter's conflation of these issues has made it difficult to analyze and address his arguments; nevertheless, we will consider them as fully as his briefing allows.

Turning now to the merits of Carter's appeal, we first address Carter's argument that the trial court abused its sentencing discretion by overlooking purportedly significant mitigating circumstances. Sentencing decisions rest within the sound discretion of the trial court. *Anglemyer v. State*, 868 N.E.2d 482 (Ind. 2007), *clarified on reh'g*, 875 N.E.2d 218. So long as the sentence is within the statutory range, it is subject to review only for an abuse of discretion. *Id.* "An abuse of discretion occurs if the decision is 'clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom.'" *Id.* at 491 (quoting *K.S. v. State*, 849 N.E.2d 538, 544 (Ind. 2006)).

A trial court may abuse its sentencing discretion in a number of ways, including: (1) failing to enter a sentencing statement at all; (2) entering a sentencing statement that includes aggravating and mitigating factors that are unsupported by the record; (3) entering a sentencing statement that omits reasons that are clearly supported by the record; or (4) entering a sentencing statement that includes reasons that are improper as a matter of law. *Anglemyer v. State*, 868 N.E.2d 482. If the trial court abuses its discretion in one of these or another way, remand for resentencing is the appropriate remedy "if we cannot say with

5

confidence that the trial court would have imposed the same sentence had it properly considered reasons that enjoy support in the record." *Id.* at 491.

In pronouncing Carter's sentence, the trial court noted that Carter was seventeen years old at the time of the offense, and identified his young age as the only mitigating circumstance. The trial court found a number of aggravating circumstances, including Carter's lengthy history of juvenile delinquency, which had become progressively more serious and violent and included multiple unsuccessful attempts at rehabilitation. The court also found as an aggravating factor that Carter had chased Rodenzo down and shot him in the back as he attempted to flee, as well as the fact that the offenses were committed in the presence of, or at least within earshot of, three very young children. Additionally, the trial court found that Carter had attempted to intimidate a witness by pointing his fingers at his own head in the shape of a gun and mouthing the word "pow" while Canady was on the stand. *Transcript* at 420.

Carter argues that the trial court abused its discretion in failing to identify two additional, allegedly significant mitigating factors: (1) his lack of parental guidance and (2) the shorter sentences received by his accomplices. An allegation that the trial court failed to identify a mitigating factor requires the defendant to establish that the mitigating evidence is both significant and clearly supported by the record. *Anglemyer v. State*, 868 N.E.2d 482. A sentencing court is not obligated to find a circumstance to be mitigating merely because it is advanced as such by the defendant, nor is it required to explain why it chose not to make a finding of mitigation. *Felder v. State*, 870 N.E.2d 554 (Ind. Ct. App. 2007). A trial court

6

does not abuse its discretion in failing to find a mitigating factor that is highly disputable in nature, weight, or significance. *Rogers v. State*, 878 N.E.2d 269 (Ind. Ct. App. 2007), *trans. denied*. Additionally, a defendant who fails to proffer proposed mitigators at sentencing is precluded from advancing them for the first time on appeal. *Pennington v. State*, 821 N.E.2d 899 (Ind. Ct. App. 2005).

With respect to Carter's argument that the trial court abused its discretion in failing to consider his lack of parental guidance as a mitigating factor, we first note that Carter did not expressly request the trial court to consider this circumstance as a mitigating factor. At sentencing, defense counsel noted that none of Carter's immediate family was in attendance, but that a cousin and friend were present. Counsel went on to say, "I've not heard from anyone on his behalf and I'm not saying that justifies anything. But what I am saying is it's—it's sad all around[.]" *Transcript* at 409. Counsel then asked the court to consider Carter's young age as a mitigating circumstance. Elsewhere in the transcript, counsel asked the court to "consider his background where he came from." *Id.* at 411. Because counsel's reference to Carter's family history was ambiguous at best, we cannot conclude that Carter's argument in this regard was properly preserved for appeal.

In any event, we note that Carter declined to be interviewed for his pre-sentence investigation report, and as a result, all family information contained in the report had been gleaned from a pre-dispositional report prepared as part of a juvenile delinquency proceeding in 2009. Carter also declined to elaborate on his family situation at his sentencing hearing.

7

The trial court noted the lack of information concerning Carter's family history at the sentencing hearing:

> His family history is sketchy here in this. I don't have recent information because of his failure to cooperate as I've ordered him to do. So that makes it hard for me to know much about what's been going on recently. Clearly you are correct that his upbringing was one in which he had very little family support and very little guidance. Apparently his attitude is reflective of the lack of guidance that he had.

*Id.* at 418.

Based on this statement, it is clear that the trial court considered Carter's family situation, but declined to consider it a significant mitigating factor. Our Supreme Court has held that "evidence of a difficult childhood is entitled to little, if any, mitigating weight." *Bethea v. State*, 983 N.E.2d 1134, 1141 (Ind. 2013). Accordingly, we conclude that the trial court did not abuse its discretion in declining to consider Carter's lack of parental support to be a significant mitigating factor.

Carter also appears to argue that the trial court abused its discretion by failing to consider the sentences received by Canady, Moore, and Poindexter as mitigating circumstances. Again, counsel's reference to this purported mitigating factor at the sentencing hearing was equivocal at best. Counsel stated that under their plea agreements, Moore and Canady were "going to get somewhere between twenty and twenty-five years." *Transcript* at 410. Counsel acknowledged that Carter was the shooter, but stated that "in some ways, he is less culpable in my mind than Mr. Poindexter who set it all up. That is really neither here nor there. I'm just asking the court to consider his young age, consider his background where he came from." *Id.* at 411. Carter made no argument concerning

8

Poindexter's sentence, but the prosecutor mentioned that Poindexter's sentences for murder and robbery were to be served concurrently. Under these circumstances, we cannot conclude that Carter preserved the argument that his codefendants' sentences are a significant mitigating factor.

Waiver notwithstanding, we disagree that the trial court was required to consider Carter's confederates' sentences as a mitigating factor. Assuming without deciding that the sentences received by others convicted of the same crimes might constitute valid mitigating factors in some cases, we cannot conclude that the disparity between Carter's sentence and those received by his accomplices is a significant mitigator here. With respect to Moore's and Canady's capped sentences, we note that they both pleaded guilty and testified against Carter. It is therefore unsurprising that they received significantly shorter sentences than Carter. Although Carter presented no evidence concerning Poindexter's sentence at his sentencing hearing, on appeal he states that a review of the Indiana Department of Correction website shows that Poindexter received concurrent sentences of fifty-five years for murder and thirty years for attempted robbery. Carter argues that he should have received a similar sentence because "his conduct was no more heinous than Poindexter's[.]" *Appellant's Brief* at 9. We strongly disagree. Although Poindexter arranged the robbery, he instructed his accomplices not to harm anyone. Nevertheless, Carter brought a gun, chased Rodenzo out of the apartment, and shot him in the back as he attempted to flee. Carter also notes that unlike Poindexter, he had no adult criminal history. In light of Carter's long and disturbing history of juvenile delinquency, which will be discussed further below, it is apparent that this

distinction is solely a function of Carter's young age, and not an indicator that he is any less inclined toward criminal activity than Poindexter. The trial court did not abuse its discretion in declining to consider the sentences received by Carter's accomplices as mitigating factors.

2.

Next, Carter argues that his seventy-two-year sentence is inappropriate. Article 7, section 4 of the Indiana Constitution grants our Supreme Court the power to review and revise criminal sentences. Pursuant to Ind. Appellate Rule 7, the Supreme Court authorized this court to perform the same task. *Cardwell v. State*, 895 N.E.2d 1219 (Ind. 2008). Per App. R. 7(B), we may revise a sentence "if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Wilkes v. State*, 917 N.E.2d 675, 693 (Ind. 2009), *cert. denied*, 131 S.Ct. 414 (2010). Nevertheless, "we must and should exercise deference to a trial court's sentencing decision, both because Rule 7(B) requires us to give 'due consideration' to that decision and because we understand and recognize the unique perspective a trial court brings to its sentencing decisions." *Stewart v. State*, 866 N.E.2d 858, 866 (Ind. Ct. App. 2007). The burden is on the defendant to persuade us that his sentence is inappropriate. *Reid v. State*, 876 N.E.2d 1114 (Ind. 2007).

Carter committed murder, for which the sentencing range is forty-five to sixty-five years, with an advisory sentence of fifty years, and class C felony attempted robbery, for which the sentencing range is two to eight years, with an advisory sentence of four years. Ind. Code Ann. §§ 35-50-2-3, -6 (West, Westlaw current through P.L. 135 with effective

dates through April 30, 2013). Carter was sentenced to sixty-four years for murder, along with a consecutive eight-year term for robbery, resulting in an aggregate seventy-two-year sentence. Thus, Carter received a sentence one year below the statutory maximum for his offenses.[4]

Considering the nature of the offense, we note that Carter and his accomplices conspired to enter the apartment for the purpose of robbing the occupants of marijuana. Although Poindexter told the group that they should not hurt anyone, Carter was armed with a gun. Additionally, when Moore tried to back out of the robbery, Carter threatened him with the gun. When they entered the apartment and attempted to carry out the robbery, ten people, including three children, were present. We acknowledge Carter's contention that he did not enter the apartment with the intention of killing anyone. When Rodenzo fled from the apartment, however, Carter chased him down and shot him in the back as he attempted to escape, killing him.

Considering the character of the offender, we note that this is Carter's first adult conviction. This is unsurprising, however, because Carter was only seventeen years old at the time of offense. Prior to committing the instant offense, Carter had numerous juvenile adjudications for progressively more serious and violent conduct. At just eleven years old, a delinquency petition for battery was dismissed in exchange for informal home detention. His first juvenile adjudication came in March 2005, when he was twelve, for acts that would be

---

[4] We note that Carter states that "[m]aximum sentences are generally reserved for the worst offenders[.]" *Appellant's Brief* at 8 (quotation omitted). Because Carter has not received the maximum sentence, we need not address this specific argument. For the reasons the set forth above, we do not find his seventy-two-year sentence inappropriate.

class B felony burglary if committed by an adult. In November 2005, Carter was adjudicated delinquent for what would be class A misdemeanor resisting law enforcement if committed by an adult. In October 2005, a petition alleging that Carter had committed what would be class A misdemeanor intimidation was filed, and a true finding was entered in January 2006. In August 2006, Carter was again adjudicated delinquent for committing what would be class D felony escape if committed by an adult. The same month, after Carter and two other boys broke into a clothing store and stole the cash register, Carter was again adjudicated delinquent for committing what would be class A misdemeanor criminal conversion if committed by an adult. On May 21, 2007, when Carter was just fourteen years old, a delinquency petition was filed alleging that Carter had committed what would be carrying a handgun without a license and resisting law enforcement if committed by an adult. The juvenile court entered a true finding for resisting law enforcement and dismissed the handgun allegation.

Thereafter, Carter's history takes a decidedly more dangerous and violent turn. In March 2009, when Carter was approximately sixteen years old, he was arrested for carjacking and leading the police on a vehicle and foot pursuit. As a result of these acts, a delinquency petition was filed alleging that Carter had committed what would be class D felony auto theft, class D felony receiving stolen property, class D felony resisting law enforcement, and class A misdemeanor fleeing law enforcement if committed by an adult. The juvenile court entered a true finding on the resisting allegation and dismissed the remaining allegations. In April 2009, while a resident of a juvenile detention center, Carter

threw a chair at the center's superintendent, fracturing the man's eye socket. As a result, Carter was adjudicated delinquent for committing what would be class C felony battery if committed by an adult.

We additionally note that throughout the course of Carter's contact with the juvenile justice system, his probation was modified numerous times, he repeatedly failed home detention and suspended commitments, and he failed placements at the Kokomo Academy and Resource Academy before finally being committed to the Department of Correction. Even Carter admits that he has "never completed a sentence (dispositional order) without committing another offense or gone more than a few months between offenses when not imprisoned[.]" *Appellant's Brief* at 8. Moreover, Carter attempted to intimidate Canady, who was called to testify against him, by mimicking shooting a gun while Canady was on the stand. We also note that while awaiting sentencing in this matter, Carter was charged with class A misdemeanor battery on a corrections or law enforcement officer.

Nevertheless, Carter appears to argue that his sentence is inappropriate in light of the shorter sentences his accomplices received. In the context of App. R. 7(B) review, our Supreme Court has noted that "we 'need not compare' sentences of codefendants[.]" *Knight v. State*, 930 N.E.2d 20, 22 (Ind. 2010) (quoting *Dennis v. State*, 908 N.E.2d 209, 214 (Ind. 2009)). Even if we were inclined to do so, as detailed above, Carter's role in the crimes justifies a significantly longer sentence than those of his confederates. In light of Carter's role in the crime and his history of juvenile delinquency, which is shocking both in its length

and severity, we cannot conclude that his seventy-two-year sentence for murder and class C felony attempted robbery is inappropriate.

Judgment affirmed.

ROBB, C.J., and CRONE, J., concur.