## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 17 2019, 10:42 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Jill Gonzalez
Public Defender
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Henry Flores
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Alonzo Williams,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

July 17, 2019

Court of Appeals Case No.
18A-CR-1563

Appeal from the
Delaware Circuit Court

The Honorable
Thomas A. Cannon, Jr., Judge

Trial Court Cause No.
18C05-1702-MR-1

**Kirsch, Judge.**

[1] Alonzo Williams ("Williams") appeals his convictions for murder,[1] a felony, criminal confinement while armed with a deadly weapon,[2] a Level 3 felony, and his adjudication as an habitual offender.[3] He raises two issues, which we restate as:

> I. Whether the trial court undermined Williams's ability to help prepare his defense, and thus violated his rights under the federal and Indiana constitutions, by rescinding its earlier order that gave Williams access to the jail law library; and

> II. Whether the State committed prosecutorial misconduct by failing to provide a copy of the deposition that allegedly contained exculpatory evidence.

[2] We affirm.

## Facts and Procedural History

[3] On the evening of February 13, 2017, Terrance Walker ("Walker") picked up Williams at a Delaware County residence, and the two drove to Walker's wife's residence. *Tr. Vol. II* at 56-57. Once they arrived, Walker told Williams that Jeffery Brown ("Brown") was involved in the murder of Williams's cousin Joseph Johnson ("Johnson"). *Id.* at 56-58. This information confused and

---

[1] *See* Ind. Code § 35-42-1-1(1).

[2] *See* Ind. Code § 35-42-3-3(a), (b)(2)(A).

[3] *See* Ind. Code § 35-50-2-8.

angered Williams. *Id*. at 58. Williams later drove away in Walker's SUV to sell marijuana. *Id*. at 58-61. A few hours later, Williams returned, accompanied by Brown and Jeremy Holland ("Holland"). *Id.* at 61-62. Williams told Walker that he, Brown, and Holland planned to commit a robbery "to help [ ] Brown get out of town." *Id.* at 65.

[4] Williams, Holland, and Brown drove to another Delaware County residence, ostensibly to visit three of Williams's friends, Steven McPherson ("McPherson"), Curtis Atkinson, and Shelli Goode ("Goode"). *Tr. Vol. III* at 8-9. The situation seemed normal until Williams asked to see Brown's gun and, when Brown hesitated, Williams grabbed Brown's gun, removed the magazine, ordered Brown to stand against the wall, and checked him for weapons while Holland held Brown at gunpoint. *Id.* at 16-18. At Williams's direction, McPherson and Goode bound Brown's hands behind his back. *Tr. Vol. II* at 177; *Tr. Vol. III* at 19, 58. Williams and Holland, while pointing guns at Brown, escorted Brown out of the residence and put Brown into the SUV. *Tr. Vol. III* at 22-23. As Williams was about to drive away with Brown and Holland, Williams told McPherson that "he was going to give [Brown] a pass, drive him out of town and let him go, and he's not supposed to come back to town." *Id.* at 22.

[5] Meanwhile, around 1:00 a.m., Gary Greenlee ("Greenlee") heard a vehicle driving in front of his Delaware County residence and then observed the vehicle pull onto his parents' nearby property. *Tr. Vol. I* at 130-33. Minutes later, Greenlee heard gunshots. *Id.* at 133. Greenlee called his parents and 911. *Id.*

at 133, 136. When Greenlee's father came to the scene, he could see that the gate to his property had been forced open by a vehicle. *Id.* at 155-57. When he returned the next day to fix the gate, he discovered Brown's body and called 911. *Id*. at 152-58.

[6] The next day, Williams contacted his friend Danny Terry ("Terry"). *State's Ex.* 265. Williams asked Terry to drive him to Indianapolis. *Id.* On the way to Indianapolis, Williams admitted to Terry that he had killed Brown. *Id.* Williams and Terry tossed the guns used during the crime into a retention pond. *Id.* An autopsy later determined that Brown died from multiple nine-millimeter gunshot wounds, including seven shots to his face and head. *Tr. Vol. II* at 41-42; *State's Ex.* 132. On February 22, 2017, the State charged Williams with murder, felony murder, criminal confinement while armed with a deadly weapon, and also alleged that he was an habitual offender. *Appellant's App. Vol. II* at 67-69, 81.

[7] On January 3, 2018, Williams's counsel learned that the State had identified Terry as a potential State's witness. *Tr. Vol. I* at 91; *Appellant's Br.* at 9. On January 31, 2018, the State deposed Terry, who explained his role in helping Williams dispose of the guns. *State's Ex.* 265. On February 5, 2018, the trial court issued an order that allowed Williams two hours per day, either in the law library or a visiting room, to review transcripts of DVDs and depositions. *Appellant's App. Vol. IV* at 43. However, the same day the trial court issued that order, Williams made several calls from jail in which he attempted to interfere

with witnesses and made physical threats regarding witnesses Terry and Walker. *Tr. Vol. I* at 94-96; *State's Ex.* 1A, 3.

[8] Therefore, the State moved the trial court to rescind its previous order that gave Williams access to the law library. *Tr. Vol. I* at 70-72. The trial court held a hearing, and after reviewing the evidence, granted the State's request to rescind the order. *Appellant's App. Vol. IV* at 131. However, the trial court still allowed Williams to review discovery materials if accompanied by his attorney. *Id*.

[9] The trial commenced on February 13, 2018. *Tr. Vol. I* at 102. On February 21, 2018, the jury found Williams guilty as charged. *Appellant's App. Vol. IV* at 166-68. During the second phase of the trial, the jury found Williams was an habitual offender. *Id*. at 167-68. At the April 24, 2018 sentencing hearing, the trial court merged Williams's felony-murder conviction into his murder conviction to avoid a potential double jeopardy violation. *Appellant's App. Vol. V* at 103. It then sentenced Williams to sixty years for murder, enhanced by seventeen years for his habitual offender status, and thirteen years for his Level 3 felony criminal confinement conviction. *Id.* at 110-11. The trial court ordered the sentences to run consecutively for an aggregate term of ninety years. *Id.* at 111. Williams now appeals.

## Discussion and Decision

## I. Order Rescinding Access to Law Library

[10] Williams argues that when the trial court rescinded its order that allowed him to spend two hours per day in the jail's law library to review discovery

materials, it violated his fundamental rights under both Article 1, Section 12 of the Indiana Constitution and the United States Constitution.[4] Williams claims that by restricting his access to these materials, the trial court undermined his ability to help his attorney prepare his defense.

[11] The United States Constitution requires that inmates have meaningful access to the courts.

> Although the Fourteenth Amendment does not guarantee criminal defendants a general right to discovery, *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977), it does require prisons to allow inmates "meaningful access to the courts," either by "providing … adequate law libraries or adequate [legal] assistance," *Bounds v. Smith*, 430 U.S. 817, 824 (1977).

*Griffith v. State*, 59 N.E.3d 947, 952 (Ind. 2016) (some citations omitted); *see also Engle v. State*, 467 N.E.2d 712, 715 (Ind. 1984).

[12] Similarly, the Indiana Constitution confers a right of access to the courts:

> All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay.

---

[4] Williams does not specify which provision in the United States Constitution was violated by the trial court's decision to rescind its earlier order.

Ind. Const. art. 1, § 12.

[13] Williams has waived this issue for lack of cogent argument. "A party waives an issue where the party fails to develop a cogent argument or provide adequate citation to authority and portions of the record." *Wingate v. State*, 900 N.E.2d 468, 475 (Ind. Ct. App. 2009); *see also* Ind. Appellate Rule 46(A)(8)(a) (requiring an appellant to support contentions with cogent reasoning and citations to authorities, statutes, and appendix or parts of record on appeal). Here, the full extent of Williams's argument is the following statement: "Without these materials, [Williams] would be in the dark and unable to assist his counsel in his own defense." *Appellant's Br.* at 8. Williams's argument lacks supporting legal authority. While he refers to both the federal and Indiana constitutions in his Statement of the Issues, his argument provides no legal authority, let alone apply any legal authority to the facts and circumstances of his case. Finally, he does not specify how his ability to help his attorney prepare a defense was compromised by the trial court's order that rescinded his access to the jail law library.

[14] Waiver aside, in rescinding its earlier order that had allowed Williams to review discovery materials in the jail law library, the trial court did not undermine Williams's ability to help his attorney prepare his defense, and, therefore, it did not violate his rights under either Article 1, Section 12 of the Indiana Constitution or the United States Constitution.

In *Greene v. State*, Frederick Greene, an inmate at the Michigan City prison, was placed in administrative segregation, which barred him from visiting the law library at his correctional facility. *Greene v. State*, 515 N.E.2d 1376, 1379 (Ind. 1987) (overruled in part on other grounds by *Myers v. State*, 532 N.E.2d 1158, 1159 (Ind. 1989)). Greene argued that his administrative segregation inhibited his efforts to assist in his defense by limiting his ability to do research in the library. *Id.* In rejecting this argument, our Supreme Court held that segregation did not impede Greene's defense because he had unlimited access to the record through his attorney. *Id.* Likewise, in *Shoulders v. State*, 462 N.E.2d 1034 (Ind. 1984), Shoulders was placed in administrative segregation after he was involved in a fatal stabbing. Shoulders argued that the segregation limited his ability to interview witnesses and seek assistance of counsel for his defense. Our Supreme Court ruled that Shoulders had not demonstrated that segregation denied him access to his attorney or potential witnesses. *Id.* at 1036. *Cf. Best v. State*, 566 N.E.2d 1027, 1030 (Ind. 1991) (pro se defendant's right of access to court was not undermined when he was denied direct access to a law library where he had access to legal materials through standby counsel).

Here, while the trial court rescinded Williams's access to the law library, it allowed his attorney to use a jail computer when visiting Williams to share electronic records with Williams. *Appellant's App. Vol. IV* at 131. Thus, Williams had unlimited access to the record through his attorney, so the trial court's ruling did not undermine Williams's ability to help prepare his defense.

*Id.* Therefore, the trial court did not deny Williams "meaningful access to the courts." *See Griffith*, 59 N.E.3d at 952; *see also Greene*, 515 N.E.2d at 1382.

## II. State Withholding Exculpatory Evidence

[17] Williams claims the State committed prosecutorial misconduct, violating its duty under *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding exculpatory evidence from Williams until three weeks before trial. Specifically, Williams appears to argue that the State delayed in providing him with a copy of the deposition of Terry, who Williams learned would be testifying as a witness for the State even though he had helped Williams dispose of the murder weapons.

[18] Before explaining why Williams has waived this claim, we first observe that Williams's claim lacks merit because he merely alleges that the State delayed in providing a copy of the deposition, not that the State never provided a copy of the deposition. To prevail on a *Brady* claim, a defendant must show, among other things, that the State failed to disclose the evidence. *See Bunch v. State*, 964 N.E.2d 274, 297 (Ind. Ct. App. 2012), *trans. denied*. Williams, however, appears to concede that the State disclosed the evidence asking, as he does in his brief, whether it was "prosecutorial misconduct to hold *Brady* material *until* three (3) weeks before jury trial . . . ?" *See Appellant's Br.* at 12 (emphasis added).

[19] However, even if the State failed to provide a copy of the deposition, Williams has waived this argument. First, he did not object to the admission of the Terry deposition; indeed, his trial counsel affirmatively agreed to its admission. *Tr.*

*Vol. III* at 95.  Thus, Williams has waived this claim by failing to make a *Brady* objection in the trial court and also by affirmatively acquiescing to the admission of the deposition.  *See Leatherman v. State*, 101 N.E.3d 879, 885 (Ind. Ct. App. 2018) (a party may not present an argument for the first time on appeal, and the failure to present an argument below results in waiver on appeal); *see also Cole v. State*, 28 N.E.3d 1126, 1136 (Ind. Ct. App. 2015) (when defendant affirmatively states he has "no objection" to proffered evidence, he invites any error in its admission, and a claim of fundamental error may be waived if appellant invited the alleged fundamental error).

[20] Second, Williams has waived this claim because he fails to make a cogent argument.  *See Wingate*, 900 N.E.2d at 475; App. R. 46(A)(8)(a).  His full argument, as set out below, is nothing more than a statement of the issue:

> Was it prosecutorial misconduct to hold *Brady* material until three (3) weeks before jury trial, that the prosecutor had in his possession for three (3) months before [Williams] found out about his witness during a deposition of a police officer, where the information was slipped in by the officer?

*Appellant's Br.* at 12.

[21] This cursory argument neither shows nor alleges that Williams made a specific request to the prosecutor for a copy of Terry's deposition.  *See United States v. Agurs*, 427 U.S. 97, 106 (1976).  Williams does not demonstrate that the deposition was material to the issue of guilt and that access to the deposition would have created a reasonable probability of a different outcome at trial.  *See*

*Bunch*, 964 N.E.2d at 297. Thus, Williams has waived this claim for lack of

cogent argument. *See Wingate*, 900 N.E.2d at 475; App. R. 46(A)(8)(a).[5]

[22] Affirmed.

Vaidik, C.J., and Altice, J., concur.

---

[5] Finally, we observe that even if Williams had made a cogent argument in support of this claim, we could not review this issue. Because Williams did not object to the admission of the deposition – and indeed affirmatively agreed to its admission – the only way the issue would properly be before us is if Williams had alleged fundamental error on appeal. *See Hollingsworth v. State*, 987 N.E.2d 1096, 1098-99 (Ind. Ct. App. 2013), *trans. denied*. However, even if Williams had raised this claim within the context of fundamental error, such a claim arguably would have been waived because Williams invited any error in the admission of the deposition by affirmatively agreeing to its admission. *See Cole v. State*, 28 N.E.3d 1126, 1136 (Ind. Ct. App. 2015).