## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jan 31 2020, 9:22 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Donald E.C. Leicht
Peru, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Jaquail Smith,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

January 31, 2020

Court of Appeals Case No.
19A-CR-1613

Appeal from the Howard Circuit Court

The Honorable Lynn Murray, Judge

Trial Court Cause No.
34C01-1711-MR-232

**Crone, Judge.**

# Case Summary

Jaquail Smith appeals his conviction, following a jury trial, for murder. The sole issue presented for our review is whether the State presented sufficient evidence to support the conviction. Finding the evidence sufficient, we affirm.

# Facts and Procedural History

The facts most favorable to the verdict indicate that Smith started living with his girlfriend, K.M., in June 2017. K.M. gave birth to a son, A.M., on September 10, 2017. K.M. was A.M.'s primary caretaker. Smith had watched A.M. only one time for K.M. prior to November 2017. On the morning of November 8, 2017, A.M. woke up at approximately 6:15 a.m. and, according to K.M., was behaving completely normal. That evening, K.M. went to run errands, and she left eight-week-old A.M. in Smith's care. Before she left, K.M. fed A.M., burped him, changed his diaper, and left him on her bed. A.M. did not have any injuries before K.M. left.

When K.M. returned to the apartment at approximately 7:00 p.m., she walked back to the bedroom and saw Smith sitting on the bed with A.M. K.M. immediately noticed that A.M.'s head was swollen on the side. A.M. "was trying to cry but he couldn't and he could hardly breathe … [it was] like he was conscious but he wasn't." Tr. Vol. 2 at 58. Smith was "flipp[ing] out" and told K.M. that they needed to go to the hospital. *Id*. at 57. Smith repeatedly denied knowing what had happened to A.M. The couple took A.M. to Community Howard Regional Health Hospital, and from there he was airlifted to Riley

Hospital for Children in Indianapolis. When K.M. arrived at Riley, a doctor informed her that A.M.'s feet "were turning purple" and that "they had to revive him a few times on the air lift there and that it's not looking good." *Id*. at 63. Doctors "encouraged [K.M.] to give it another hour and if nothing changed then [she had] the option of whether to pull [A.M.] off the ventilator or not." *Id*. Shortly thereafter, K.M. chose to remove A.M. from the ventilator. A.M. died at 3:25 a.m. on November 9, 2017.

[4] An autopsy revealed that A.M.'s cause of death was blunt force injury to the head. Specifically, A.M. suffered a biparietal skull fracture running from the parietal bone of the skull on one side to the temporal bone of the skull on the other. Stated another way, "[t]his was a large fracture or break in the skull" that then caused extensive "subscalp and subgaleal hemorrhage." *Id*. at 103, 105. This kind of injury would have resulted in "nearly immediate symptoms. This would not be a child who appears normal … there would be some visible changes … in the baby's behavior nearly … simultaneously" to the injury. *Id*. at 106. In addition to the blunt force injury to the head, the autopsy revealed several older healing injuries including rib fractures, clavicular fractures, and ulnar fractures that possibly represented "a pattern of previous injuries." *Id*. at 108.

[5] Smith was twice interviewed by police. During the first interview, he denied having any idea what happened to A.M. He stated that he was alone in the apartment with A.M. for at least two hours, that he fell asleep playing video games, and that at one point he went to check on A.M. and the baby wasn't

breathing. He pinched A.M.'s cheek to wake him up, and A.M. started crying. Smith then returned to playing video games. Smith stated that he did not notice that A.M.'s head was swollen until after K.M. returned home. During the second interview, Smith again denied knowing what happened to A.M. He confirmed that he was alone with A.M. for a period of time and that A.M.'s head was not swollen when K.M. left the apartment.

[6] Smith was arrested on November 22, 2017. Smith told his cellmate that he killed A.M. Smith claimed that he was in another room when A.M., who had been napping, rolled off the bed, hit his head on the nightstand, and started to cry. Smith stated that he then "bludgeoned the infant" in the head with a glass mason jar. *Id*. at 148.

[7] The State charged Smith with murder, level 1 felony aggravated battery, and level 2 felony voluntary manslaughter. A jury trial was held on July 11 through July 13, 2019. The jury found Smith guilty of murder and aggravated battery. Due to double jeopardy concerns, the trial court entered judgment of conviction solely on the murder count, and sentenced Smith to a term of sixty-five years. This appeal ensued.

## Discussion and Decision

[8] Smith challenges the sufficiency of the evidence supporting his murder conviction. When reviewing a claim of insufficient evidence, we neither reweigh the evidence nor assess witness credibility. *Bell v. State*, 31 N.E.3d 495, 499 (Ind. 2015). We look to the evidence and reasonable inferences drawn

therefrom that support the conviction, and will affirm if there is probative evidence from which a reasonable factfinder could have found the defendant guilty beyond a reasonable doubt. *Id*. In short, if the testimony believed by the trier of fact is enough to support the conviction, then the reviewing court will not disturb it. *Id*. at 500. It is well settled that a conviction "may be sustained based on circumstantial evidence alone if that circumstantial evidence supports a reasonable inference of guilt." *Davis v. State*, 791 N.E.2d 266, 270 (Ind. Ct. App. 2003), *trans. denied*.

[9] A person who knowingly or intentionally kills another human being commits murder. Ind. Code § 35-42-1-1. Here, the State presented uncontroverted evidence that Smith was alone with A.M. for approximately two hours on November 8, 2017. K.M. testified that when she returned to the apartment, A.M.'s head was swollen and he was having trouble breathing. A.M.'s cause of death was determined to be blunt force trauma to the head. Smith admitted to his cellmate that he bludgeoned A.M. in the head with a glass mason jar because the infant was crying. Police found several mason jars in the apartment, and Smith's own testimony confirmed that he went to the apartment while A.M. was in the hospital and hid a glass mason jar in the bushes.[1]

[10] Smith complains that the evidence was "conflicting" and that the jury was presented with "equally plausible" versions of events and chose the State's version rather than his. Appellant's Br. at 10. This is precisely the jury's

---

[1] Smith claimed that he did so because the mason jar contained marijuana.

prerogative. *See McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005) (it is exclusive province of jury to weigh conflicting evidence). The State presented substantial evidence of probative value to support the jury's verdict.

[11] To the extent that Smith also claims that the trial court erred in instructing the jury by "misle[ading] the jury on the issue of reasonable doubt," Appellant's Br. at 8, Smith has waived our review of this issue. First, Smith's appellate argument is not cogent. A party waives an issue where the party fails to develop a cogent argument. *Wingate v. State*, 900 N.E.2d 468, 475 (Ind. Ct. App. 2009). Moreover, it is well settled that "at a minimum, 'appellate review of a claim of error in the giving of a jury instruction requires a timely trial objection clearly identifying both the claimed objectionable matter and the grounds for the objection[.]'" *Bowman v. State*, 51 N.E.3d 1174, 1179 (Ind. 2016) (citation omitted). Smith failed to object at trial to either the preliminary or final jury instructions, and he makes no claim that fundamental error occurred. *See Wright v. State*, 730 N.E.2d 713, 716 (Ind. 2000) (failure to object to jury instruction results in waiver on appeal unless giving instruction was fundamental error). Accordingly, we need not address his instructional claim. His conviction is affirmed.

[12] Affirmed.

May, J., and Pyle, J., concur.